## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PROJECT ON GOVERNMENT OVERSIGHT, INC.**<br>1100 13th Street, NW<br>Suite 800<br>Washington, DC 20005,<br><br>    **Plaintiff,**<br><br>    v.<br><br>**U.S. OFFICE OF SPECIAL COUNSEL**<br>1730 M Street, N.W.<br>Washington, DC 20043<br><br>    **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **Civil Action No.** |

## **COMPLAINT**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 220 and 2202, for injunctive, declaratory, and other appropriate relief. Plaintiff Project On Government Oversight, Inc. ("POGO") challenges the refusal of defendant U.S. Office of Special Counsel ("OSC") to provide POGO with all non-exempt portions of documents responsive to a FOIA request POGO filed with OSC for documents related to OSC's investigations into the political activities of former Trump administration officials in violation of the Hatch Act, 5 U.S.C. § 7323.

### **JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

3. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

**PARTIES**

4. Plaintiff POGO is a nonpartisan independent organization based in Washington, D.C. and organized under section 501(c)(3) of the Internal Revenue Code. Founded in 1981, POGO champions reforms to achieve a more effective, ethical, and accountable federal government that safeguards constitutional principles. POGO's investigators and journalists take leads and information from insiders and verify the information through investigations using FOIA, interviews, and other fact-finding strategies. POGO's investigative work has been recognized by Members of Congress, executive branch officials, and professional journalism organizations. For instance, in 2015, POGO won the Robert D.G. Lewis Watchdog Award, the Society of Professional Journalists Washington, D.C. Professional Chapter's highest journalistic award, for reporting on the Department of Justice's opaque system for handling allegations of attorney misconduct within its ranks. In 2018, POGO won an award from the Society for Advancing Business Editing & Writing for its investigative series scrutinizing the government's oversight of offshore drilling. POGO extensively used records obtained under FOIA for this investigation.

5. OSC is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f) and has possession and control of the records POGO seeks in this action.

**STATUTORY BACKGROUND**

6. FOIA requires federal agencies, upon request, to make records "promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless one or more specific statutory exemptions apply.

7. The agency must provide the public records when they are requested in order "to ensure an informed citizenry, vital to the functioning democratic society." *NLRB v. Robbins Tire*

*& Rubber Co.,* 437 U.S. 214, 242 (1978).

8. An agency must make a determination on a FOIA request within twenty business days and notify the requester of which of the requested records it will release, which it will withhold and why, and the requester's right to appeal the determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(i).

9. The twenty-day deadline for an agency to make a determination on a request begins on the earlier of: (l) the date "the request is first received by the appropriate component of the agency" or (2) "ten days after the request is "first received by any component of the agency that is designated in the agency's regulations . . . to receive [FOIA] requests." 5 U.S.C. § 552(a)(6)(A)(ii).

10. In unusual circumstances, an agency may extend the time limits the FOIA prescribes by written notice to the person making such request that sets forth the reasons for such extension and the date on which a determination is "expected" to be dispatched. No such notice shall specify a date that would result in an extension for more than ten working days. 5 U.S.C. § 552(a)(6)(B)(i).

11. The FOIA grants to requesters the right to administratively appeal any adverse determination an agency makes on their FOIA request. 5 U.S.C. § 552(a)(6)(A). Subject to some exceptions not applicable here, a requester must exhaust administrative remedies before filing suit in federal district court.

**FACTUAL BACKGROUND**

12. Throughout the 2020 presidential election campaign period multiple Trump administration officials violated the Hatch Act, often with little or no consequences including from OSC. Their conduct included making statements supporting or opposing a candidate for

partisan political office while speaking in an official capacity and/or using their official authority in connection with and furtherance of the Republican National Committee ("RNC").

13. These officials' Hatch Act violations include using official government accounts to promote candidates for political office. For example, former Senior Advisor to the President Ivanka Trump used her @IvankaTrump Twitter account for substantial official government activity and to promote numerous candidates for political office. *See, e.g.*, @ivankaTrump, Twitter (Jan. 2, 2021); https://twitter.com/IvankaTrump/status/13455290646900495493. Other Trump administration officials used their official government Twitter accounts to tweet in support of then-President Donald Trump. *See, e.g.*, Secretary David Bernhardt @SecBernhardt, Twitter (Oct. 26, 2020 10:42 AM), https://twitter.com/SecBernhardt/status/1320782868239552515.

14. Some Trump administration officials used other media for partisan purposes. Then-HUD Secretary Ben Carson used HUD's Office of Public Affairs to send out a partisan message that labelled cities as "liberal-run" and "Democratic-run" and made public statements about the "left." *See* https://www.brown.senate.gov/newsroom/press/release/brown-colleagues-demand-the-office-of-special-counsel-investigate-hud-secretary-ben-carson-for-possible-hatch-act-violation.

15. Similarly, in September 2020, then-Secretary of Education Betsy DeVos criticized then-presidential candidate Joseph Biden in an interview with *Fox* that the Department of Education promoted by posting the interview on its YouTube page. Daniel Lippman & Michael Stratford, DeVos under investigation for potentially violating Hatch Act because of Fox News interview, *Politico*, Sept. 21, 2020, https://www.politico.com/news/2020/09/21/betsy-devos-hatch-act-investigation-419471. *Politico* reported that OSC had opened an investigation

13

into the matter and quoted the head of the non-profit Checks and Balances Project who stated that an OSC attorney had told him the attorney had been assigned to the matter, that OSC would "'investigate matters in your complaint,'" and noted that "'[t]he incident seems very well documented.'" *Id.* (quoting OSC Hatch Act attorney Eric Johnson).

16. Then-White House Director of National Intelligence John Ratcliffe also criticized then-candidate Biden in a *Fox News* interview. Brooke Singman, Ratcliffe says Hunter Biden laptop, emails 'not part of some Russian disinformation campaign', *Fox News*, Oct. 19, 2020, https://www.foxnews.com/politics/ratcliffe-hunter-biden-laptop-emails-not-russian-disinformation-campaign.

17. A November 9, 2021 report OSC issued on the results of its investigation into the political activities of senior Trump administration officials notes that "at least 13 senior Trump administration officials did violate the Hatch Act prior to the [2020] election" and that they did so "with the administration's approval." U.S. Office of Special Counsel, Investigation of Political Activities by Senior Trump Administration Officials During the 2020 Presidential Election (Nov. 9, 2021), https://osc.gov/Documents/Hatch%20Act/Reports/Investigation%20of%20Political%20Activities%20by%20Senior%20Trump%20Administration%20Officials%20During%20the%202020%20Presidential%20Election.pdf ("OSC Hatch Act Report").

18. The OSC Hatch Act Report examined numerous complaints alleging that senior Trump administration officials, including Secretary Bernhardt and Ivanka Trump, violated the Hatch Act either by making statements in support of or in opposition to a candidate for political office while speaking in an official capacity or by using their official authority to further the RNC. *Id.*

19. The Report concluded that 13 officials, which it identified by name and title,

14

committed Hatch Act violations. It also characterized the complaints concerning Secretary Bernhardt and Ivanka Trump as raising "enforcement challenges" and excluded them from the 13 named officials found to have violated the Hatch Act. Secretary DeVos was also excluded because the Department of Education provided "inadequate responses," leaving OSC with "insufficient evidence to reach a conclusion regarding her conduct." Director of National Intelligence John Ratcliffe and Secretary Carson were not mentioned in the report at all.

20. The OSC Hatch Act Report noted the Trump administration's "willful disregard for the law," which it characterized as "especially pernicious considering the timing of when many of these violations took place," specifically "that critical period immediately prior to the 2020 election during which OSC was unable to both investigate and resolve the violations before election day." *Id.*

21. As an example, the OSC Hatch Act Report describes the decision by then-Secretary of State Michael Pompeo to flout the law by changing his agency's policy to allow him to speak at the Republican National Convention where he engaged in political activity by delivering a speech that, "us[ed] his official authority by repeatedly referencing the work of the State Department." *Id.* Not only did Pompeo act to further President Trump's reelection campaign but he did so possibly at the request of President Trump himself, reflecting "the Trump administration's willingness to manipulate government business for partisan political ends." *Id.*

22. On August 25, 2021, POGO submitted to OSC a FOIA request seeking:

> All documents (press releases, memos, warnings, etc.) that close out investigations of alleged Hatch Act violations by Trump administration officials released by the Office of Special Counsel, including but not limited to the following personnel: Ivanka Trump, Jared Kushner, Robert O'Brien, Kayliegh McEnany, Ja'Ron Smith, Larry Kudlow, Dan Brouillette, John Ratcliffe, Marc Short, David Friedman, Devin O'Malley, Brian Morgenstern, Karoline Leavitt, Andrew Giuliani, Nikki Haley, Stephanie Grisham, Dan Scavino, Mark Meadows, Ben Carson, and Betsy DeVos.

15

23. POGO also sought a waiver of fees associated with processing its request, explaining that its request concerns the operations of the federal government and disclosure of the requested records likely will contribute to a better understanding of relevant government procedures by POGO and the general public in a significant way, citing 5 U.S.C. § 552(a)(4)(A)(iii). POGO stated further that the request primarily and fundamentally is for non-commercial purposes.

24. In support of its fee waiver request POGO pointed to numerous violations of the Hatch Act by Trump administration officials throughout the 2020 presidential election campaign. As POGO explained, OSC failed to formally rebuke most of the officials despite their violations of the Hatch Act at the expense of the taxpayers.

25. In support of its fee waiver request POGO cited examples of Hatch Act violators that included former Chief of Staff Mark Meadows, who travelled to various battleground states and gave speeches in support of Donald Trump's re-election campaign; former Senior Advisor to the President Ivanka Trump who openly campaigned in Florida; and other administration officials who tweeted in support of Trump from their official government Twitter accounts. As POGO noted, the Hatch Act was created to keep elections free of inappropriate interference or influence by government officials. POGO further explained that the public has a right to know whether violations by top Trump administration officials were properly addressed.

26. POGO described its activities in investigating, exposing, and seeking to remedy systemic abuses of power, mismanagement, and subservice by the federal government to powerful special interests. POGO noted its intent to analyze the information responsive to its FOIA request and share its analysis with the public, policy makers, and the media.

27. POGO also requested that because it qualifies as a member of the news media it

16

not be charged search or review fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II). POGO outlined the various ways in which it routinely and systematically disseminates information to thousands of concerned citizens, policy makers, and the media via its website, direct email, reports, and newsletters.

28. By letter dated August 26, 2021, OSC acknowledged receiving POGO's FOIA request on August 25, 2021. In a follow-up email of August 27, 2021, OSC requested an opportunity to discuss clarifying the request with POGO.

29. In an August 31, 2021 telephone conversation and follow-up email with OSC POGO clarified it seeks Hatch Act investigation closing letters dated between November 2020 and April 2021, regardless of whether the alleged Hatch Act violation occurred outside that time period. In those same communications OSC offered to provide POGO with previously processed records regarding the 2020 Republican National Convention.

30. By email dated September 23, 2021, OSC clarified that the previously processed records included: (1) congressional letter correspondence between August 25, 2020 and December 2, 2020, to OSC regarding Secretary of State Pompeo's RNC speech; (2) corresponding OSC response letters to Congress regarding that speech; and (3) OSC response letters to congressional requests for advisory opinions between August 1 and December 2, 2020, regarding the 2020 Republican National Convention.

31. By letter dated October 20, 2021, OSC provided POGO with the agency's final response. The letter explained that OSC had identified 38 responsive pages; was releasing 17 pages in full; and was releasing 21 pages in part pursuant to FOIA exemptions 6, 7(C), and 7(D).

32. OSC invoked Exemptions 6 and 7(C) to withhold the identities of individuals OSC had investigated and cleared of Hatch Act violations and specific details about the alleged

violations. OSC's October 20 letter provided no details on why OSC was invoking those exemptions and made no reference whatsoever to any public interest in the information and whether OSC had balanced that interest against any privacy interests.

33. In its final determination letter OSC did not make a *Glomar* response claiming that as to any of the individuals named in POGO's request it could neither confirm nor deny the existence of responsive records.

34. By letter dated December 14, 2021, POGO administratively appealed OSC's decision to withhold portions of 21 pages in response to POGO's August 25, 2021 FOIA request. In its appeal POGO explained how OSC had failed to demonstrate that the withheld material properly was subject to FOIA Exemptions 6 and 7(C).

35. First, POGO noted OSC's failure to provide any details about why it was invoking the two exemptions, its failure to make any reference to any public interest in the information, and its failure to indicate whether OSC had balanced the public interest against any privacy interest. POGO pointed out that without this information there is no basis to conclude that OSC's reliance on Exemptions 6 and 7(C) is valid.

36. Next, POGO explained the clear and significant public value of the withheld information, which concerns public officials with diminished privacy interests. Those public officials include cabinet level officials Ben Carson and Betsy DeVos and high-ranking White House officials Ivanka Trump and Larry Kudlow. Their status as powerful and prominent government officials "tip[s] the 7(C) balance in favor of disclosure." *Fund for Constitutional Gov't v. NARA*, 656 F.2d 856, 865 (D.C. Cir. 1981).

37. POGO also pointed out that it already is publicly known that many of the officials named in POGO's FOIA request were investigated for previous Hatch Act violations, including

Betsy DeVos and Dan Scavino. Further, their conduct that underlies the OSC investigations about which POGO sought records also is a matter of public record. Taken as a whole, these factors point to the greatly diminished privacy interests that these public officials enjoy.

38.     POGO also explained how the public interest in the requested records, by contrast, is at an apex. Hatch Act violations by Trump administration officials were rampant and blatant. POGO pointed to the findings in the OSC Hatch Act Report that the Hatch Act violations by some of the most senior officials in the Trump administration reflected "a willingness . . . to leverage the power of the executive branch to promote President Trump's reelection[.]" OSC's conclusion that "such flagrant and unpunished violations erode the principal foundation of our democratic system—the rule of law" further underscore a public interest of the highest order in the requested documents.

39.     POGO further noted that the OSC Hatch Act Report in fact discusses the conduct of several officials named in POGO's request, including Jared Kushner, Ivanka Trump, March Short, and others but fails to address violations allegedly committed by Ja'Ron Smith, John Ratcliffe, Devin O'Malley, Karoline Leavitt, Andrew Giuliani, and Ben Carson.

40.     POGO also explained that its request concerns potential Hatch Act violations related to the 2020 presidential election—a context that makes the question of whether Trump administration officials violated that act of particular significance. Indeed, the OSC Hatch Act Report notes that this timing makes "[t]he administration's willful disregard for the law . . . especially pernicious[.]"

41.     POGO's appeal also explained that the public interest in the requested documents is not diminished by the fact that OSC chose to redact information only where it found no violation. These redactions leave on the table the question of greatest public importance: did

OSC properly investigate and apply the Hatch Act restrictions? The answer to this question would shed a bright light on how OSC carries out its statutory duties and would inform public knowledge about the nature of the conduct that does and does not rise to the level of a Hatch Act violation.

42. Moreover, as POGO explained, OSC previously disclosed to POGO the very same type of information it withheld here when it sent POGO a letter advising that OSC had cleared former Secretary of Agriculture Sonny Perdue of any Hatch Act violations.

43. Finally, POGO noted the failure of OSC to make a *Glomar* response, which investigating agencies typically employ to prevent any stigma from being associated with an investigation. Instead, in every correspondence with POGO, OSC delineated by name the individuals for whom it would perform a records search.

44. By letter dated January 19, 2022, OSC advised POGO that it was granting its appeal in part and remanding 16 pages to its FOIA Unit for reconsideration in light of the OSC Hatch Act Report.

45. By letter dated August 12, 2022, OSC advised POGO that it had re-reviewed 19 pages in light of the OSC Hatch Act Report and was continuing to withhold portions of those records pursuant to FOIA exemptions 6, (7)(C), and 7(D). OSC noted that while it had unredacted some of the facts from the prior release it still could not disclose the names of the individuals who filed the complaints. Of note, POGO never requested those names.

46. In a follow-up email of August 16, 2022, POGO expressed its disappointment that OSC was continuing to withhold the names of senior administration officials from its Hatch Act investigation close-out letters. POGO requested that OSC provide it more information about the decision to withhold these names. OSC never responded.

47. In its August 16, 2020 follow-up email POGO also noted that while OSC withdrew its exemption claims for a few contextual details in three letters sent on December 21, 2020; January 15, 2021; and March 5, 2021, it continued to withhold similar contextual details from the other letters. POGO questioned what appeared to be a selective application of the exemptions, especially given that OSC elsewhere released the names of some officials who have been investigated. POGO requested additional information to understand OSC's decision to redact this information in some letters but not in others. OSC never responded.

48. POGO has now exhausted all applicable administrative remedies with respect to its August 25, 2021 request.

## PLAINTIFF'S CLAIMS FOR RELIEF

49. Plaintiff repeats and re-alleges paragraphs 1-48.

50. With August 25, 2021 FOIA request Plaintiff properly asked for records within the custody and control of the U.S. Office of Special Counsel.

51. Defendant OSC wrongfully withheld agency records requested by Plaintiff by withholding from disclosure the names of senior Trump administration officials from its Hatch Act investigation close-out letters.

52. Plaintiff POGO is therefore entitled to injunctive and declaratory relief with respect to the immediate processing and disclosure of the names of senior Trump administration officials in the records requested in its August 25, 2021 FOIA request.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Order Defendant to immediately disclose the names of senior Trump administration officials in the records requested in its August 25, 2021 FOIA request at no cost

21

to Plaintiff;

(2) Issue a declaration that Plaintiff is entitled to the immediate disclosure of the requested records at no cost to Plaintiff;

(3) Provide for expeditious proceedings in this action;

(4) Retain jurisdiction of this action to ensure no agency records are wrongfully withheld;

(5) Award Plaintiff its costs and reasonable attorneys' fees in this action; and

(6) Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Anne L. Weismann
Anne L. Weismann
(D.C. Bar No. 298190)
5335 Wisconsin Avenue, N.W.
Suite 640
Washington, D.C. 20015
(301) 717-6610
weismann.anne@gmail.com
*Attorney for Plaintiff*

Dated: November 4, 2022

22