UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PROJECT ON GOVERNMENT OVERSIGHT, INC., <br><br> Plaintiff, <br><br> v. <br><br> U.S. OFFICE OF SPECIAL COUNSEL, <br><br> Defendant. | Civil Action No. 22-3381 (DLF) |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, the U.S. Office of Special Counsel, respectfully moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment in this Freedom of Information Act case brought by Plaintiff, Project on Government Oversight, Inc.  As explained in the accompanying memorandum and supporting materials, Defendant conducted an appropriate search and produced all reasonably segregable non-exempt material, withholding only information properly exempt from disclosure.  For this reason, Defendant is entitled to summary judgment as a matter of law.

\*     \*     \*

Dated: May 1, 2023
      Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: _____/s/ Dedra S. Curteman_____
     DEDRA S. CURTEMAN
     Assistant United States Attorney
     601 D Street, NW
     Washington, DC 20530
     202-252-2550

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROJECT ON GOVERNMENT
OVERSIGHT, INC.,

       Plaintiff,

   v.

U.S. OFFICE OF SPECIAL COUNSEL,

       Defendant.

Civil Action No. 22-3381 (DLF)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

BACKGROUND ................................................................................................................ 1

    I.     POGO'S FOIA REQUEST .................................................................... 2

    II.    THE SPECIAL COUNSEL'S INITIAL RESPONSE ............................. 3

    III.   THE SPECIAL COUNSEL'S INVESTIGATION OF POLITICAL ACTIVITIES OF SENIOR OFFICIALS IN PRESIDENT DONALD J. TRUMP'S ADMINISTRATION AND THE SPECIAL COUNSEL'S 2021 HATCH ACT REPORT ................................................................................................ 4

    IV.   THE SPECIAL COUNSEL'S RECONSIDERATION OF POGO'S FOIA REQUEST, THE SPECIAL COUNSEL'S AUGUST 12, 2022 RE-RELEASE, AND THE SPECIAL COUNSEL'S APRIL 14, 2023 SUPPLEMENTAL DISCLOSURE ........................................................................................ 5

    V.    POGO'S COMPLAINT ....................................................................... 6

LEGAL STANDARD ...................................................................................................... 6

ARGUMENT ................................................................................................................... 8

    I.     THE SPECIAL COUNSEL CONDUCTED AN ADEQUATE SEARCH. ........... 8

    II.    THE SPECIAL COUNSEL PROPERLY INVOKED EXEMPTIONS 6 AND 7(C) TO WITHHOLD INFORMATION THAT WOULD LEAD TO IDENTIFICATION OF THE INDIVIDUALS THE SPECIAL COUNSEL INVESTIGATED. ................................................................................ 9

         A.    The Information Withheld by the Special Counsel Was Found in Records Compiled for Law Enforcement Purposes. ............................................. 11

         B.    The Special Counsel Properly Withheld Under Exemptions 6 and 7(C) Information That Would Identify the Individuals Investigated. ............... 12

    III.   THE SPECIAL COUNSEL RELEASED ALL REASONABLY SEGREGABLE INFORMATION ................................................................................ 22

    IV.   FORESEEABLE HARM WOULD RESULT FROM DISCLOSURE ............... 23

CONCLUSION .............................................................................................................. 24

## **TABLE OF AUTHORITIES**

**Cases**

*Am. Civil Liberties Union v. Dep't of Just.*,
    750 F.3d 927 (D.C. Cir. 2014) ...................................................................... 14, 15

*Ancient Coin Collectors Guild v. Dep't of State*,
    641 F.3d 504 (D.C. Cir. 2011) ............................................................................ 8

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................ 6

*Baker & Hostetler LLP v. Dep't of Commerce*,
    473 F.3d 312 (D.C. Cir. 2006) ............................................................................ 8

*Bast v. Dep't of Just.*,
    665 F.2d 1251 (D.C. Cir. 1981) ..................................................................... 10-11

*Beck v. Dep't of Just.*,
    997 F.2d 1489 (D.C. Cir. 1993) ....................................................... 10, 13, 14, 16

*Blackwell v. FBI*,
    646 F.3d 37 (D.C. Cir. 2011) ............................................................................ 11

*Brayton v. Off. of U.S. Trade Rep.*,
    641 F.3d 521 (D.C. Cir. 2011) ............................................................................ 6

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................ 6

*Chambers v. Dep't of Interior*,
    568 F.3d 998 (D.C. Cir. 2009) ............................................................................ 8

*Chang v. Dep't of Navy*,
    314 F. Supp. 2d 35 (D.D.C. 2004) .................................................................... 10

*Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Labor*,
    478 F. Supp. 2d 77 (D.D.C. 2007) ...................................................................... 7

*Davis v. Dep't of Just.*,
    968 F.2d 1276 (D.C. Cir. 1992) ................................................................... 10, 16

*Dep't of Just. v. Reps. Comm. for Freedom of Press*,
    489 U.S. 749 (1989) .......................................................................................... 11

*Dep't of State v. Wash. Post Co.*,
    456 U.S. 595 (1982) ............................................................................................ 9

*DiBacco v. U.S. Army*,
    795 F.3d 178 (D.C. Cir. 2015) ........................................................................ 7, 8

*Food Mktg. Inst. v. Argus Leader Media,*
  139 S. Ct. 2356 (2019) ................................................................. 11

*Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.,*
  656 F.2d 856 (D.C. Cir. 1981) ...................................................... 18

*Jefferson v. Dep't of Just.,*
  284 F.3d 172 (D.C. Cir. 2002) ...................................................... 10

*Juarez v. Dep't of Justice,*
  518 F.3d 54, 61 (D.C. Cir. 2008) .................................................. 21

*Lepelletier v. FDIC.,*
  164 F.3d 37 (D.C. Cir. 1999) ............................................... 10, 13, 9

*McGehee v. CIA,*
  697 F.2d 1095 (D.C. Cir. 1983) ...................................................... 7

*Mead Data Cent., Inc. v. Dep't of Air Force,*
  566 F.2d 242, 260 (D.C. Cir. 1977) ............................................. 21

*Media Rsch. Ctr. v. Dep't of Just.,*
  818 F. Supp. 2d 131 (D.D.C. 2011) ......................................... 6-7, 7

*Mittleman v. Off. of Pers. Mgmt.,*
  76 F.3d 1240 (D.C. Cir. 1996) ...................................................... 10

*Nat'l Sec. Archive Fund, Inc. v. CIA,*
  402 F. Supp. 2d 211, 221 (D.D.C. 2005) ..................................... 21

*People for the Ethical Treatment of Animals v. Nt'l Inst. of Health,*
  745 F.3d 535 (D.C. Cir. 2014) ....................................... 14, 19, 20, 21

*Perry v. Block,*
  684 F.2d 121 (D.C. Cir. 1982) ........................................................ 8

*Quinon v. FBI,*
  86 F.3d 1222 (D.C. Cir. 1996) ................................................. 14, 19

*Reps. Comm. for Freedom of Press v. FBI,*
  3 F.4th 350 (D.C. Cir. 2021) .................................................... 22, 23

*Roth v. Dep't of Just.,*
  642 F.3d 1161 (D.C. Cir. 2011) ..................................................... 23

*SafeCard Servs., Inc. v. SEC,*
  926 F.2d 1197 (D.C. Cir. 1991) ...................................................... 7

*Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. Dep't of Just.,*
  823 F.2d 574 (D.C. Cir. 1987) ...................................................... 16

*Stern v. FBI,*
    737 F.2d 84 (D.C. Cir. 1984) ................................................................ 11

*Sussman v. U.S. Marshals Serv.,*
    494 F.3d 1106 (D.C. Cir. 2007) ......................................................... 21-22

*Weisberg v. Dep't of Just.,*
    745 F.2d 1476 (D.C. Cir. 1984) ............................................................. 7

**Statutes**

5 U.S.C. § 552 ........................................................ 10, 11, 12, 17, 18, 22, 9

5 U.S.C. § 1216 ................................................................................ 11

5 U.S.C. § 7324 ................................................................................ 17

5 U.S.C. §§ 1212(a)(5), 1216(a) ............................................................. 13

5 U.S.C. §§ 7323, 7324 ....................................................................... 11

This case involves an August 25, 2021, FOIA request made by Plaintiff, the Project on Government Oversight ("POGO"), to Defendant, the U.S. Office of Special Counsel ("Special Counsel") for documents that close out investigations of alleged Hatch Act violations by Trump administration officials, any Congressional correspondence to or from the Special Counsel regarding former Secretary of State Mike Pompeo's Republic National Convention Speech, and any Special Counsel response letters to Congressional requests for advisory opinions regarding the 2020 Republican National Convention.   As explained in further detail below and in the accompanying declarations of Mahala Vixamar ("Vixamar Declaration") and Travis Millsaps ("Millsaps Declaration"), the Special Counsel conducted a reasonably adequate search, provided all reasonably segregable non-exempt records, and withheld only that information that is properly exempt from release under FOIA Exemptions 6 and 7(C) upon balancing whether the disclosure would constitute a clearly unwarranted invasion of personal privacy under Exemption 6 and whether the disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption 7(C).

## **BACKGROUND**

The Special Counsel is "an independent federal investigative and prosecutorial agency," and its primary mission "is to safeguard the merit system by protecting federal employees and applicants from prohibited personnel practices."   *See* "About OSC," available at https://osc.gov/Agency (last accessed Apr. 17, 2023).   The Special Counsel's authority derives from four statutes—the Civil Service Reform Act, the Whistleblower Protection Act, the Hatch Act, and the Uniformed Services Employment & Reemployment Rights Act.  *See id*.  Relevant here, the Special Counsel investigates alleged violations of the Hatch Act, a federal statute which limits certain political activities of federal employees.   *See* https://osc.gov/Services/Pages/HatchAct.aspx (last accessed Apr. 17, 2023).  In this vein, when

the Special Counsel receives a complaint alleging a violation of the Hatch Act, the Special Counsel investigates the underlying complaint. *See* Vixamar Decl. ¶ 20. Relevant here, after some investigations, the Special Counsel issues its final determination (or closing letter), as to whether the Special Counsel has determined a Hatch Act violation has occurred. *See id.* (explaining that the Special Counsel is required to investigate all Hatch Act allegations and does so without regard to a complainant's motivation).

## I.    POGO's FOIA REQUEST

Against this backdrop, on August 25, 2021, POGO requested:

> All documents that close out investigations of alleged Hatch Act violations by Trump administration officials released by the Office of Special Counsel, including but not limited to the following personnel: Ivanka Trump, Jared Kushner, Robert O'Brien, Kayleigh McEnany, Ja'Ron Smith, Larry Kudlow, Dan Brouillette, John Ratcliffe, Marc Short, David Friedman, Devin O'Malley, Brian Morgenstern, Karoline Leavitt, Andrew Giuliani, Nikki Haley, Stephanie Grisham, Dan Scavino, Mark Meadows, Ben Carson, and Betsy DeVos.

Ex. 1, August 25, 2021, POGO Request. Roughly one month later, on September 29, 2021, POGO narrowed its request to include only:

> Hatch Act investigation final closing letters dated between November 2020 and April 2021 for the same individuals named in its earlier letter; previously released records, including any Congressional letter correspondence to [the Special Counsel] regarding Secretary of State Mike Pompeo's Republican National Convention (RNC) speech from August 25, 2020 to December 2, 2020; any corresponding [Special Counsel] letters to Congress regarding Secretary of State Mike Pompeo's RNC speech; and any [Special Counsel] response letters to Congressional requests for advisory opinions regarding the 2020 RNC from August 1, 2020 to December 2, 2020.

Ex. 2, POGO Sept. 29, 2021 Correspondence. POGO's initial request and its subsequent correspondence did not include a third-party identify waiver for disclosure of the requested information. Vixamar Decl. ¶ 7.

The Special Counsel's Search:

In response to POGO's initial request and the September 29, 2021 clarification, the Special Counsel conducted a search of its electronic files for documents that contain the name of any of the individuals POGO sought.  *Id.* ¶ 29.  From the documents found, the Special Counsel pulled the final Hatch Act investigation closing letters for the individuals POGO named in its request.  *Id.* ¶ 30.  Additionally, the Special Counsel checked its electronic files to identify previously released records, including any Congressional letter correspondence to the Special Counsel regarding Secretary of State Mike Pompeo's Republican National Convention speech from August 25, 2020 to December 2, 2020; any corresponding Special Counsel response letters to Congress regarding Secretary of State Mike Pompeo's RNC speech; and any Special Counsel response letters to Congressional requests for advisory opinions regarding the 2020 Republican National Convention from August 1, 2020 to December 2, 2020 based on POGO's initial FOIA request and its September 29, 2021 email confirmation of the Special Counsel's email clarifying and narrowing the scope of POGO's request.  The Special Counsel has determined that it searched all files likely to contain responsive materials.  *Id.*

As a result of its search, the Special Counsel identified 38 responsive pages, consisting of one letter to Representative Carolyn Maloney, two letters to Special Counsel Henry J. Kerner, one letter to Deputy Secretary of State Stephen E. Biegun, one letter to Representative Maloney and other Representatives, and 11 the Special Counsel closing letters for the Trump administration officials POGO identified.  *Id.* ¶ 31.

## II.    THE SPECIAL COUNSEL'S INITIAL RESPONSE

On October 20, 2021, the Special Counsel's FOIA Unit responded to POGO's request, releasing 17 pages in full and 21 pages in part with material withheld pursuant to FOIA Exemptions 6, 7(C), and 7(D).  *See* Ex. 3, Oct. 20, 2021, Response to POGO's FOIA Request; Vixamar Decl.

¶ 9.   POGO administratively appealed the response, challenging the redactions made under Exemptions 6 and 7(C).  *See* Ex. 4, POGO's Appeal of Oct. 20, 2021, Response; Vixamar Decl. ¶ 11.  On January 19, 2022, the Special Counsel's Office of General Counsel responded to POGO's appeal by remanding 19 pages to the FOIA Unit for reconsideration of the redactions.  *Id*. ¶ 12.

III.   **THE SPECIAL COUNSEL'S INVESTIGATION OF POLITICAL ACTIVITIES OF SENIOR OFFICIALS IN PRESIDENT DONALD J. TRUMP'S ADMINISTRATION AND THE SPECIAL COUNSEL'S 2021 HATCH ACT REPORT**

On November 9, 2021 (after the Special Counsel's initial response to POGO's request), the Special Counsel issued a report titled "Investigation of Political Activities by Senior Trump Administration Officials During the 2020 Presidential Election."  *See id*. ¶ 10.  The November 9, 2021, report outlined various complaints the Special Counsel received regarding senior officials in the Donald J. Trump administration and their potential violations of the Hatch Act in the months prior to the 2020 election.  *See* Nov. 9, 2021, "Investigation of Political Activities by Senior Trump Administration Officials During the 2020 Presidential Election," ("2021 Hatch Act Report") available at https://osc.gov/Documents/Hatch%20Act/Reports/Investigation%20of%20Political% 20Activities%20by%20Senior%20Trump%20Administration%20Officials%20During%20the%2 02020%20Presidential%20Election.pdf (last accessed Apr. 17, 2023).

In the 2021 Hatch Act Report, the Special Counsel addressed 11 senior Trump administration officials that the Special Counsel determined violated the Hatch Act during official interviews or media appearances, including former Secretary of Energy Dan Brouillette; former Senior Counselor to the President, Kellyanne Conway; former White House Director of Strategic Communications, Alyssa Farah; former U.S. Ambassador to Israel, David Friedman; former Senior Advisor to the President, Jared Kushner; former White House Press Secretary, Kayleigh McEnany; former White House Chief of Staff, Mark Meadows; former Senior Advisor to the

President for Policy, Stephen Miller; former White House Deputy Press Secretary, Brian Morgenstern; former National Security Advisor, Robert O'Brien; and former Chief of Staff to the Vice President, Marc Short.  *See* 2021 Hatch Act Report at 17-27.  Additionally, the 2021 Hatch Act Report addressed two senior Trump administration officials that the Special Counsel determined violated the Hatch Act during the Republican National Convention, namely former Secretary of State, Mike Pompeo and former Acting Secretary of Homeland Security, Chad Wolf. *Id*. at 29-37.  The Special Counsel issued and published the 2021 Hatch Act Report to educate employees about Hatch Act-prohibited activities, highlight the enforcement challenges the Special Counsel confronted during the investigations, and to attempt to deter similar violations in the future.  *Id*. at iv.  The 2021 Hatch Act Report also provided transparency into the Special Counsel's investigation of former Trump administration officials and the Special Counsel's investigation of Hatch Act violations stemming from their conduct.  *See* Vixamar Decl. ¶ 10.

## IV.  THE SPECIAL COUNSEL'S RECONSIDERATION OF POGO'S FOIA REQUEST, THE SPECIAL COUNSEL'S AUGUST 12, 2022 RE-RELEASE, AND THE SPECIAL COUNSEL'S APRIL 14, 2023 SUPPLEMENTAL DISCLOSURE

Given the issuance of the Special Counsel's 2021 Hatch Act Report and POGO's appeal of the Special Counsel's initial response, on August 12, 2022, the Special Counsel re-released the 19 pages it previously released, with fewer redactions.  *See* Ex. 6, Response on Remand; Vixamar Decl. ¶ 13.  In the August 12, 2022, re-release, the Special Counsel continued to withhold material that would identify the subjects of the Hatch Act complaints pursuant to FOIA Exemptions 6 and 7(C).  Vixamar Decl. ¶ 13.

Thereafter, on April 14, 2023, the Special Counsel made a further supplemental disclosure, releasing the names and identifying information in closing letters for Ivanka Trump, Kayleigh McEnany, and Mark Meadows, because these three individuals were publicly identified as subjects of the Special Counsel's Hatch Act investigations in the 2021 Special Counsel Hatch Act Report.

*See* Ex. 7, Apr. 14, 2023 Letter and Supplemental Production; Vixamar Decl. ¶ 15; Millsaps Decl. ¶ 3.  Additionally, the Special Counsel determined that it could release additional information for certain subjects of investigation, specifically, individuals identified as Subject 1, Subject 2, Subject 4, and Subject 5 in the accompanying Vixamar declaration, without revealing the identity of the subjects.  As such, the Special Counsel made a further release of previously withheld information from the closing letters of these individuals on April 14, 2023.  *See* Ex. 7; Vixamar Decl. ¶¶ 16-19; Millsaps Decl. ¶¶ 4-8.

In total, the Special Counsel has withheld in part, the closing letters of six individuals who are referred to as "Subject" officials as explained in the accompanying Vixamar and Millsaps declarations.  Specifically, the Special Counsel withheld the names and addresses of the individuals investigated as well as any details about the investigation that would allow the public to determine the name of the individual.  *See* Vixamar Decl. ¶ 14; Millsaps Decl. ¶ 4.  The Special Counsel disclosed the underlying details of its investigation into each one of the subjects to the extent that the factual details did not reveal the identity of the subject.  *See id*.

## V.   POGO's COMPLAINT

POGO filed its complaint on November 7, 2022, challenging the Special Counsel's withholdings based on Exemptions 6 and 7(C) "to withhold the identities of individuals the Special Counsel had investigated and cleared of Hatch Act violations and specific details about the alleged violations."  ECF No. 1 ¶ 32.

## <u>LEGAL STANDARD</u>

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden is on the party moving for summary

judgment to demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  A genuine issue is one that "might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248.  Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment[.]"  *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.").  A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).  "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"  *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Media Rsch*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).

## ARGUMENT

## I.    THE SPECIAL COUNSEL CONDUCTED AN ADEQUATE SEARCH.

As an initial matter, the Special Counsel met its search obligations under FOIA.  An agency is entitled to summary judgment with respect to adequacy of its search if it "demonstrate[s] that it made a good faith effort to conduct a search . . . using methods which can be reasonably expected to produce the information requested."  *DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (cleaned up).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request but rather whether the *search* for those documents was *adequate*."  *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original).  The search is thus gauged "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."  *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (cleaned up).  In short, "[a] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request."  *DiBacco*, 795 F.3d at 194-95.

An agency can establish the reasonableness of its search by "reasonably detailed, nonconclusory affidavits describing its efforts."  *Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006).  Such affidavits are sufficient if they "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched."  *Chambers v. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).  The standard is not demanding.  "[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice."  *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982).  "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other

documents."' *SafeCard Servs.*, 926 F.2d at 1200 (citation omitted); *see also Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir 2004) ("[M]ere speculation that as yet uncovered documents might exist[] does not undermine the determination that the agency conducted an adequate search for the requested records.").

As set forth in the Vixamar declaration, the Special Counsel's search was reasonable.  In summary, the Special Counsel searched its electronic files for documents that contained the name of any of the individuals POGO sought.  *See* Vixamar Decl. ¶ 29.  From the documents found, the Special Counsel pulled the final Hatch Act investigation closing letters for the individuals POGO named in its request.  *See id.* ¶ 30.  The Special Counsel also checked its electronic files to identify previously released records, including any Congressional letter correspondence from August 5, 2020, to December 2, 2020, to the Special Counsel regarding Secretary of State Mike Pompeo's Republican National Convention speech; any corresponding the Special Counsel response letters to Congress regarding Secretary of State Mike Pompeo's Republican National Convention speech; and any Special Counsel response letters to congressional requests for advisory opinions regarding the 2020 Republican National Convention from August 1, 2020 to December 2, 20220.  *See id.* On this record, the Court should conclude that the Special Counsel's search was reasonable.

II.     **THE SPECIAL COUNSEL PROPERLY INVOKED EXEMPTIONS 6 AND 7(C) TO WITHHOLD INFORMATION THAT WOULD LEAD TO IDENTIFICATION OF THE INDIVIDUALS THE SPECIAL COUNSEL INVESTIGATED.**

Pursuant to Exemptions 6 and 7(C), the Special Counsel withheld the names and addresses of Trump administration officials that the Special Counsel investigated for potential Hatch Act violations ("Subjects"), as well as underlying investigative details that would lead to their identification.  *See* Ex. 7; Vixamar Decl. ¶ 14.  At the same time, the Special Counsel balanced the public's right to know against the privacy interest of each Subject and disclosed the underlying details of its investigation into each one of the Subjects to the extent that the factual details did not

reveal the identity of the Subject.  *See* Vixamar Decl. ¶ 14.  Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The term "similar files" is broadly construed and includes "[g]overnment records on an individual which can be identified as applying to that individual."  *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual.").  In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy."  *Lepelletier*, 164 F.3d at 46; *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004).  "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  *Lepelletier*, 164 F.3d at 47; *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993).  "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose."  *Beck*, 997 F.2d at 1492.

Similarly, Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes" to the extent that the disclosure of law enforcement records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement

proceeding." *Jefferson v. Dep't of Just.*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted).  "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." *Mittleman v. Off. of Pers. Mgmt.*, 76 F.3d 1240, 1243 (D.C. Cir. 1996).

In applying Exemption 7(C), a court should "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Davis v. Dep't of Just.*, 968 F.2d 1276, 1281 (D.C. Cir. 1992).  However, as under Exemption 6, courts recognize the considerable stigma inherent in being associated with law enforcement proceedings and accordingly "do[] not require a balance tilted emphatically in favor of disclosure" when reviewing a claimed 7(C) exemption.  *Bast v. Dep't of Just.,* 665 F.2d 1251, 1254 (D.C. Cir. 1981).  To the contrary, the Supreme Court has explicitly rejected the argument that "FOIA exemptions should be narrowly construed," reasoning that "FOIA expressly recognizes that 'important interests [are] served by [its] exemptions,' and '[t]hose exemptions are as much a part of [FOIA's] purpose[s and policies] as the [statute's disclosure] requirement.'" *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (citations omitted; alterations in original).  A court need only consider the withholdings under Exemption 6 if it concludes that Exemption 7(C) does not apply to any withholdings.  *See Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 762 n.12 (1989).

### A.   The Information Withheld by the Special Counsel Was Found in Records Compiled for Law Enforcement Purposes.

To show that the records were "compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7)(C), the defendant need only "'establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law.'" *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C.

Cir. 2011) (quoting *Campbell v. Dep't of Just.*, 164 F.3d 20, 32 (D.C. Cir. 1998) (internal quotation marks and citation omitted)); *see also Stern v. FBI*, 737 F.2d 84, 89 (D.C. Cir. 1984) (holding that "the type of law enforcement to which Exemption 7 is addressed includes the enforcement of both civil and criminal federal laws."). The Special Counsel has satisfied that standard here. Plaintiff does not dispute that the closing letters at issue in this litigation were created in connection with the Special Counsel's investigation into possible violations of the Hatch Act. *See* 5 U.S.C. §§ 7323, 7324. *See also* Vixamar Decl. ¶ 22. Indeed, Plaintiff's FOIA request seeks the Special Counsel's final closing letters of Hatch Act investigations. *See* Ex. 2.

Further, the Special Counsel has the authority to conduct investigations into allegations concerning prohibited political activity by federal employees under these statutes. *See* 5 U.S.C. § 1216(a); Vixamar Decl. ¶ 20. Pertinent here, under 5 U.S.C. § 1216(a), the Special Counsel "shall . . . conduct an investigation of any allegation concerning – (1) political activity . . . relating to political activities by Federal employees." The information withheld by the Special Counsel was found in agency records that were compiled for the Special Counsel's investigatory purpose— closing letters issued by the Special Counsel to the individual investigated memorializing whether the individual violated the Hatch Act. Because the records in which the withheld information is contained were compiled for law enforcement purposes, the Court should analyze Defendant's privacy-related withholdings under Exemption 7(C).

### B.   The Special Counsel Properly Withheld Under Exemptions 6 and 7(C) Information That Would Identify the Individuals Investigated.

After weighing the private interests of individuals investigated for potential Hatch Act investigations against the public interest in disclosure, the Special Counsel reasonably determined in each instance that the disclosure of the investigated individuals' names, addresses, and details of the underlying Hatch Act investigations that could reasonably lead to the identification of the

individuals, outweighed the public interest in knowing the identification of the individuals investigated. *See* Vixamar Decl. ¶ 14, 25. POGO requested any letters closing Hatch Act investigations for 20 individuals. *See id*. ¶ 32. Ordinarily, the Special Counsel would issue a "Glomar" response as it had previously done with similar requests that requested identification of investigated individuals if the Special Counsel had not publicly acknowledged the investigation. *See id*. ¶¶ 8, 32 (citing *Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976). Here, however, the Special Counsel determined that because POGO had asked about 20 people who may or may not have been investigated by the Special Counsel, instead of issuing a *Glomar* response, it could be more transparent and still protect the privacy interests of the individuals who the Special Counsel had investigated, by redacting the name of the individual and other identifying information.

Protecting the identity of individuals investigated by the Special Counsel is particularly important because by statute, the Special Counsel is required to investigate all Hatch Act allegations and must do without regard to a complainant's motivation. *See* Vixamar Decl. ¶ 20 (citing 5 U.S.C. §§ 1212(a)(5), 1216(a))). Indeed, any person can file a Hatch Act complaint alleging unlawful political activity. *See id*. Virtually all of the Hatch Act Unit's investigations are based upon complaints filed with the Hatch Act Unit because it generally does not initiate an investigation absent receipt of a complaint. *Id*. At the same time, the Special Counsel was cognizant in the public interest of disclosure, or put another way, allowing POGO to "know what their government is up to." *Lepelletier*, 164 F.3d at 47; *Beck*, 997 F.2d at 1492. For this reason, the Special Counsel disclosed the result of the Special Counsel's investigation in each instance (finding no Hatch Act violation or in one instance closing the matter because the subject official corrected the violation and was no longer a federal employee) and the underlying details of each investigation to the extent that the details did not reveal the investigated individual's identity. *See*

Vixamar Decl. ¶¶ 14, 25.  Similarly, the Special Counsel released information that was otherwise

publicly available, including in its 2021 Hatch Act Report.  *See* Ex. 7; Vixamar Decl. ¶¶ 10, 13,

15-19; Millsaps Decl. ¶¶ 3-8.  The details of the Special Counsel's analysis for each individual's

("Subject") closing letters are discussed below.

*Subject 1*

Consistent with its FOIA obligations, the Special Counsel redacted the name and a small

amount of information that would enable the public to determine the identity of Subject 1 but

released all information that would inform the public of the government's work, including

specifically how the Special Counsel reached its conclusion that Subject 1 did not violate the Hatch

Act when they spoke at the Republican National Convention, consistent with the Special Counsel's

FOIA obligations.  *See* Vixamar Decl. ¶ 36.  In the investigation of Subject 1 that resulted in the

closing letter dated December 18, 2020, Subject 1 was found not to have violated the Hatch Act

because the Special Counsel determined that they did not speak at the 2020 Republican National

Convention in their official capacity because they did not mention their official title or position,

were not introduced with their official title or position, and did not deliver their remarks from the

White House.  *See id.* ¶ 35.

In a January 18, 2020, closing letter, the Special Counsel found that Subject 1's writing an

opinion editorial in their official capacity was a "close call," but could not conclude "given the

context in which the article was written" that they used their official authority to affect an election;

thus, the Special Counsel closed the investigation without further action.  *See id.* ¶ 37.  The Special

Counsel determined that under Exemption 7(C), disclosure of the identity of Subject 1 as well as

additional details that would lead to their identification could reasonably be expected to constitute

an unwarranted invasion of personal privacy and that under Exemption 6, disclosure of the

information would constitute a clearly unwarranted invasion of personal privacy, particularly because individuals have a privacy interest in keeping secret the fact that they were the subject of a law enforcement investigation. *See People for the Ethical Treatment of Animals v. Nt'l Inst. of Health*, 745 F.3d 535, 541 (D.C. Cir. 2014); Vixamar Decl. ¶ 34.

Added to this, the Special Counsel determined that Subject 1 did not violate the Hatch Act, *see* Vixamar Decl. ¶¶ 35, 37, and even though Subject 1 was a high-ranking federal employee in 2020, government officials "do not surrender all rights to personal privacy when they accept a public appointment." *Quinon v. FBI,* 86 F.3d 1222, 1230 (D.C. Cir. 1996); *see also Am. Civil Liberties Union v. Dep't of Just.*, 750 F.3d 927, 933 (D.C. Cir. 2014) (although the fact that a defendant accused of criminal conduct may remain a matter of public record, they are entitled to move on with their lives without having the public reminded of their alleged but never proven transgressions."); Vixamar Decl. ¶ 33. Further, the Special Counsel considered that in its 2021 Hatch Act Report, it had publicly released extensive information about its findings and conclusions regarding complaints it received alleging that senior Trump administration officials used their official authority or influence to interfere with or affect the 2020 presidential election and that the Special Counsel had released the details of its underlying investigation into Subject 1 as tipping against disclosure of the identifying information. *See* Vixamar Decl. ¶ 39. Consistent with its FOIA obligations, the Special Counsel determined that Subject 1's privacy interests outweighed the public interest in disclosure of Subject 1's identity because it would not shed additional light on how the Special Counsel investigates allegations of Hatch Act violations.

*Subject 2*

The Special Counsel withheld two letters in part pertaining to Subject 2 who was a high-ranking Trump administration official in 2020. *See id*. ¶ 42. In the first, letter, dated January 7,

2021, the Special Counsel determined that Subject 2 did not violate the Hatch Act in a 2020 interview because defending an administration's policies while speaking in their official capacity is not a prohibited activity.  *See id.* ¶ 45.  The Special Counsel also determined that Subject 2 did not violate the Hatch Act when they delivered a prerecorded speech at the Republican National Convention because they did not do so in their official capacity.  *See id.*  In a letter dated February 10, 2020, the Special Counsel closed its investigation into Subject 2 without further action because a video in which Subject 2 appeared was removed from the Twitter account and at that time, Subject 2 was no longer a federal employee.  *See id.* ¶ 42.

The Special Counsel determined that under Exemption 7(C), disclosure of the identity of Subject 2 as well as additional details that would lead to their identification could reasonably be expected to constitute an unwarranted invasion of personal privacy and that under Exemption 6, disclosure of the information would constitute a clearly unwarranted invasion of personal privacy, particularly because individuals have a privacy interest in keeping secret the fact that they were subject of a law enforcement investigation, including Hatch Act investigations, and that even very high-ranking government officials who are well known public figures retain their rights to personal privacy.  *See id.* ¶¶ 43-44.  Subject 2 had also moved onto new endeavors at the time the Special Counsel closed its investigation in 2021 and was no longer a federal employee.  *See id.* ¶¶ 42-43.

As has been recognized by the D.C. Circuit, "[t]here is little question that disclosing the identity of targets of law enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm." *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. Dep't of Just.,* 823 F.2d 574, 588 (D.C. Cir. 1987).  Balanced again these considerations, the Special Counsel considered that the public has a right to know what the Special Counsel concluded and to that end, the Special Counsel released information as to what it found

and why the investigation was closed without further action.  *See id*. ¶ 46.  Further, the Special Counsel had publicly released extensive information about its investigative findings and conclusions regarding complaints the Special Counsel received regarding senior Trump administration officials in its 2021 Hatch Act Report.  *See id*. ¶ 47.  Revealing the identity of Subject 2 would add little to nothing more to the public's understanding of the Special Counsel's operations and activities.  *See id*. ¶ 47; *see Davis v. Dep't of Just.*, 968 F.2d 1276, 1281 (D.C. Cir. 1992) (recognizing that "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to."); *Beck*, 997 F.2d at 1493 (finding that there is little public interest in disclosure of the names of certain individuals involved in an investigation as it would "reveal[] little or nothing about an agency's own conduct.").

*Subject 3*

The Special Counsel also withheld in part a February 18, 2021, letter pertaining to Subject 3, who was a senior Trump administration official in 2020.  *See* Vixamar Decl. ¶¶ 50, 53.  The Special Counsel concluded in its investigation that Subject 3 did not violate the Hatch Act based on their involvement in the 2020 Republican National Convention because of their position, which was exempt from the prohibitions of 5 U.S.C. § 7324(a).  *See id*. ¶ 50, 53.  Though the released letter did not identify Subject 3, the Special Counsel explained that there was no violation of the Hatch Act based on Subject 3's position classification.  *See id*. ¶ 54.  Indeed, as the 2021 Hatch Act Report explained, certain Senate-confirmed presidential appointees and commissioned officers within the Executive Office of the President are exempt from the prohibitions in 5 U.S.C. § 7324(a) and may engage in limited political activity while on duty or in the federal workplace.  *See id*.  The Special Counsel concluded, then, that disclosure of Subject 3's identity as well as

- 17 -

underlying information that would reveal Subject 3's identity could reasonably be expected to constitute an unwarranted invasion of their personal privacy given that even high-ranking government officials retain rights to personal privacy and individuals have a privacy interest in keeping secret the fact that they were subject of a law enforcement investigation. *See id*. ¶¶ 51-52.

Balanced against the public interest in disclosure and that in this regard, the Special Counsel had already released information about how it made its conclusions about Subject 3's activity and had released extensive information about the Special Counsel's investigation into other members of the Trump administration, the Special Counsel reasonably concluded that withholding the identifying information about Subject 3 comported with its FOIA obligations. *See id*. ¶¶ 54-55.

*Subject 4*

The Special Counsel withheld in part, a December 20, 2020, closing letter for Subject 4, a mid-level Trump administration employee in 2020, who the Special Counsel found to not have violated the Hatch Act by using their personal Twitter account for official purposes. *See id*. ¶¶ 58, 62. The Special Counsel did not withhold its conclusion and the underlying reasoning for its conclusion—that after reviewing the content of the Twitter account, including its biographical section and its tweets, retweets, and photographs, there was insufficient evidence supporting a finding that Subject 4 violated the Hatch Act. *See id*. ¶ 61.

In adhering to its responsibilities under FOIA, the Special Counsel considered the privacy interest at stake—the identification of Subject 4 and underlying details that would reveal their identity—and that individuals have a privacy interest in remaining confidential as the subject of a law enforcement investigation. *See id*. ¶ 60. Against this privacy interest, the Special Counsel also considered that it had revealed the details and conclusion of its investigation, including the

exoneration of Subject 4, as well as the fact that the Special Counsel had also publicly released the details of its investigation into numerous Trump administration officials in its 2021 Hatch Act Report.  *See id.* ¶¶ 62-63.  In total, the Special Counsel determined that revealing Subject 4's identity would add little or nothing more to the public's understanding of the Special Counsel's operations and activities apart from satisfying POGO's curiosity, s*ee Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 866 (D.C. Cir. 1981) (legitimate and substantial privacy interests cannot be overridden by public curiosity), and that on balance, the privacy interests of this once mid-level Trump Administration employee outweighed the public interest in disclosing Subject 4's identity under Exemptions 6 and 7(C).  *See* Vixamar Decl. ¶ 63.

*Subject 5*

The Special Counsel withheld portions of a December 17, 2020, letter pertaining to Subject 5, a mid-level Trump administration employee in 2020.  *See id.* ¶¶ 66, 69.  The Special Counsel released its conclusion and details of the underlying investigation, including that Subject 5 was found not to have violated the Hatch Act when they posted an article on their official Twitter account because the type of information posted was consistent with material posted while performing the duties of their position.  *See id.* ¶¶ 69-70.

In withholding the information, the Special Counsel weighed the privacy interest at stake, including that government officials do not surrender all of their rights to personal privacy when they accept a public appointment, *Quinon*, 86 F.3d at 1230, that Subject 5 was a mid-level federal employee in the Trump administration, and that individuals have a privacy interest in keeping secret the fact that they have been subject to a law enforcement investigation, including Hatch Act investigations, *see PETA*, 745 F.3d at 541.  *See* Vixamar Decl. ¶¶ 67-68.  Because the Special Counsel had released the details of its investigation into Subject 5, that Subject 5 was found not to

have violated the Hatch Act, and the extensive information the Special Counsel had already made public about its investigative findings and conclusions regarding complaints it had received about senior Trump administration officials and their actions in using official authority or influence to interfere or affect the 2020 presidential election in the 2021 Hatch Act Report, the Special Counsel determined that revealing Subject 5's identity would add little to nothing more to the public's understanding of the Special Counsel's operations and activities.  *See* Vixamar Decl. ¶¶ 69-71. Thus, the Special Counsel determined that Subject 5's privacy interest outweighed the public interest, consistent with its obligations under FOIA.

*Subject 6*

The Special Counsel also withheld portions of a January 15, 2021, closing letter of Subject 6, a mid-level Trump administration employee in 2020, in which the Special Counsel found that Subject 6 did not violate the Hatch Act when they spoke at the Republican National Convention because they did not do so in their official capacity, nor were they introduced with their official title or position.  *See id.* ¶¶ 74, 78.  The Special Counsel ultimately balanced the privacy interest at stake of the mid-level Trump administration employee, including that Subject 6 was found to not have violated the Hatch Act, that individuals, though they might be a government official, do not surrender all rights to personal privacy when they accept a public appointment, that this particular individual was a mid-level federal employee with a greater amount of privacy than a more high-ranking administration official, and that individuals have a privacy interest in keeping secret the fact that they were subject of a law enforcement investigation. *See id.* ¶¶ 75-77.

Balanced against these factors, the Special Counsel also considered that it had released the details of its investigation including its conclusion that no Hatch Act violation was found and the

extensive information the Special Counsel had already publicly made available about its investigative findings and conclusions regarding complaints the Special Counsel had received that senior Trump administration used their official authority or influence to interfere or affect the 2020 presidential election as disclosed in the 2020 Hatch Act Report. *See id.* ¶¶ 78-79.  On balance, the Special Counsel concluded that the privacy interest of this once mid-level employee outweighed the public interest in disclosing Subject 6's identity under Exemptions 6 and 7(C).  *See id.* ¶ 79.

*     *     *

As demonstrated above, in each instance of withholding the details of the above closing letters for the six individuals who were the subjects of the Special Counsel's Hatch Act investigations, the Special Counsel appropriately balanced the privacy interests at stake—that various individuals were found to not have violated the Hatch Act, that even government officials have privacy interests though they accept a public appointment, that the individuals were no longer government employees, and that individuals have a privacy interest in keeping it secret that they were the subject of a law enforcement investigation.  *See generally* Vixamar Decl.  The Special Counsel then balanced the public interests at stake—including that POGO and the public have a right to know what the Special Counsel had investigated and concluded in each instance, that the Special Counsel had disclosed its underlying investigative details in each instance, that the Special Counsel had also disclosed its conclusion on whether each Subject had violated the Hatch Act, and that the Special Counsel had released extensive information in its 2021 Hatch Act Report about its investigation of complaints about Trump administration officials and their potential influence into the 2020 presidential election.  *See id.*  On balance, in each instance, the Special Counsel reasonably concluded that the disclosure of each Subject's identity would add little or nothing more to the public's understanding of the Special Counsel's operations and activities and that the

privacy interest of each Subject outweighed the public interest in knowing the identity of each Subject. *See id.* As such, the Special Counsel met its obligations under Exemptions 6 and 7(C).

## III.    THE SPECIAL COUNSEL RELEASED ALL REASONABLY SEGREGABLE INFORMATION.

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  But this provision does not require disclosure of records in which the non-exempt information that remains is meaningless.  *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 221 (D.D.C. 2005).  And a court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated."  *Juarez v. Dep't of Just.*, 518 F.3d 54, 61 (D.C. Cir. 2008).  Consistent with this obligation, the Special Counsel conducted a thorough review of the unredacted versions of the relevant records and concluded that there is no additional, non-exempt information that may reasonably be segregated and released without undermining the interests underlying the cited exemptions.  *See* Vixamar Decl. ¶ 82; Millsaps Decl. ¶ 9.  For example, the Special Counsel withheld the portions of the closing letters that could lead to identification of the investigated individual, but left other information, including a summary of the Special Counsel's conclusions as to the underlying alleged violations.  *See* Millsaps Decl. ¶ 9.  The Special Counsel therefore properly segregated information exempted by FOIA as opposed to information that is not.  Because the supporting declarations of Ms. Vixamar and Mr. Millsaps establish that that all reasonably segregable, non-exempt information has been released, summary judgment should be granted for Defendant.  *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1107 (D.C. Cir. 2007) (noting

"presumption" that agencies complied with the obligation to disclose reasonably segregable material.").

## IV.   FORESEEABLE HARM WOULD RESULT FROM DISCLOSURE.

As explained previously, the Special Counsel reasonably balanced the privacy interest against the public interest in disclosure and in so doing, also considered the foreseeable harm that would flow from any disclosure.  *See generally* Vixamar Decl.  The foreseeable harm analysis requires the identification of the interests protected by the relevant FOIA exemptions.  As applicable here, Exemption 7(C) seeks to protect an unwarranted invasion of personal privacy. *See* 5 U.S.C. § 552(b)(7)(C).  Similarly, Exemption 6 seeks to protect against disclosure when the disclosure would constitute a clearly unwarranted invasion of personal privacy.  *See* 5 U.S.C. § 552(b)(6).  In performing the foreseeable harm analysis, context matters.  The analysis requires review of the "particular type of material at issue . . . in the specific contest of the agency action at issue."  *Reps. Comm. for Freedom of Press v. FBI*, 3 F.4th 350, 370 (D.C. Cir. 2021).

The Vixamar declaration describes how disclosure of the information at issue—in the context of a law enforcement investigation of Hatch Act violations into government officials— would foreseeably harm the privacy interests at stake.  *See* Vixamar Decl. ¶¶ 41, 49, 57, 65, 73, 81.  For each subject, the Special Counsel considered that revealing the identity of each subject and additional details that may lead the public to adduce the name of the investigated would lead to foreseeable harm.  All the subjects are now private citizens and no longer employees of the federal government, and as such, carry a greater privacy interest.  *See id.*  Any disclosure of identifying information could lead to harassment from the requestor, from the media, or from other private citizens.  *See id.*  Finally, Ms. Vixamar explains that the private citizen has an interest in not being identified of having been accused of violating a federal statute, despite their once public status.  *See id.*  Any identification of the Subject thus could lead to harassment, public ridicule,

embarrassment, or a combination of all three.  *See id.*; *Roth v. Dep't of Just.*, 642 F.3d 1161, 1174 (D.C. Cir. 2011) (recognizing that the "mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation.") (quoting *Schrecker v. Dep't of Just.*, 349 F.3d 657, 666 (D.C. Cir. 2003)).  On these bases, the Special Counsel reasonably determined that release of identifying information would lead to foreseeable harm.

## CONCLUSION

For all the reasons set forth above, in the Vixamar Declaration, and in the Millsaps Declaration, Defendant respectfully requests that this Court grant summary judgment in its favor.

Dated: May 1, 2023
      Washington, DC

           Respectfully submitted,

           MATTHEW M. GRAVES, D.C. Bar #481052
           United States Attorney

           BRIAN P. HUDAK
           Chief, Civil Division


           By:        /s/ Dedra S. Curteman
              DEDRA S. CURTEMAN
              Assistant United States Attorney
              601 D Street, NW
              Washington, DC 20530
              202-252-2550

           *Attorneys for the United States of America*