UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PROJECT ON GOVERNMENT OVERSIGHT, INC., <br><br> Plaintiff, <br><br> v. <br><br> U.S. OFFICE OF SPECIAL COUNSEL, <br><br> Defendant. | Civil Action No. 22-3381 (DLF) |

**COMBINED OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT, AND REPLY IN FURTHER SUPPORT
<u>OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

DEDRA S. CURTEMAN
Assistant United States Attorney
601 D Street N.W.
Washington, DC 20530

*Attorneys for the United States of America*

## **TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................... 2

    I.      The Special Counsel Conducted An Adequate Search. .......................................... 2

    II.     The Special Counsel Properly Invoked Exemptions 6 and 7(C). .......................... 3

    III.    The Special Counsel Released All Responsive, Non-Exemption Information. ... 10

CONCLUSION ...................................................................................................................... 11

# **TABLE OF AUTHORITIES**

*Davis v. Dep't of Just.*,
  968 F.2d 1276 (D.C. Cir. 1992) .................................................................................................. 9

*DiBacco v. U.S. Army*,
  795 F.3d 178 (D.C. Cir. 2015) .................................................................................................... 2

*Fund for Constitutional Government v. NARA*,
  656 F.2d 856 (D.C. Cir. 1981) ................................................................................................ 5, 6

*In re Clinton*,
  973 F.3d 106 (D.C. Cir. 2020) .................................................................................................... 1

*Larson v. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) .................................................................................................... 1

*Lepelletier v. FDIC*,
  164 F.3d 37 (D.C. Cir. 1999) .............................................................................................. 6, 7, 8

*v. Department of Justice*,
  746 F.3d 1082 (D.C. Cir. 2014) .................................................................................................. 5

*Wolf v. CIA*,
  473 F.3d 370 (D.C. Cir. 2007) .................................................................................................... 9

Defendant, U.S. Office of Special Counsel ("Special Counsel"), respectfully files this combined memorandum in opposition to Plaintiff's, the Project on Government Oversight's ("Plaintiff's") cross motion for summary judgment, ECF No. 15 ("Pl.'s Mot."), and reply in further support of the Special Counsel's motion for summary judgment, ECF No. 13 ("Def's Mot."). The Court should grant the Special Counsel's motion for summary judgment and deny Plaintiff's cross motion for summary judgment because the Special Counsel (A) "made a 'good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested,'" *In re Clinton*, 973 F.3d 106, 117 (D.C. Cir. 2020) (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)), (B) has "describe[d] the justifications for nondisclosure with reasonably specific detail, demonstrate[d] that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith," *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)), and (C) has described the foreseeable harm that would result from disclosure. *See* Def's Mot. at 8-9 (describing the search), 9-21 (describing the reasons for the exemptions, 22-23 (describing the Agency's efforts to release segregable information), 23-24 (describing the foreseeable harm that would result from disclosure); ECF No. 13-8, Vixamar Decl. ¶¶ 28-31 (describing the search), ¶¶ 32-81, 82 (describing the reasons for the exemptions, the Special Counsel's efforts to release segregable information, and describing the foreseeable harm that would result from disclosure); ECF No. 13-9, Millsaps Decl. ¶¶ 3-8, 9 (same).

As the D.C. Circuit has explained, "an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Id*. (cleaned up). Plaintiff has not demonstrated anything illogical or implausible in the Special Counsel's justification of its

Exemption 6 and 7(C) withholdings. For the reasons explained below, in the Special Counsel's motion for summary judgment, in the supporting Vixamar and Millsaps declarations, in the Special Counsel's undisputed statement of material facts, and in the corrected Vixamar declaration, the Court should grant the Special Counsel's motion for summary judgment.

## ARGUMENT

### I. The Special Counsel Conducted An Adequate Search.

As explained in the Special Counsel's opening Motion, Mot. at 8-9[1], the Special Counsel "demonstrate[d] that it made a good faith effort to conduct a search . . . using methods which can be reasonably expected to produce the information requested," *DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (cleaned up), by (1) searching its electronic files for documents that contained the name of any of the individuals Plaintiff sought, (2) pulling the final Hatch Act investigation closing letters for the individuals Plaintiff named in its request from the documents found, and (3) checking its electronical files to identify previously released records. *See id*. (citing Vixamar Decl. ¶¶ 29, 30).

Plaintiff takes issue with the Special Counsel's search on one basis—that the Special Counsel did not provide closing investigation letters for all the individuals named in its request, "regardless of whether the alleged Hatch Act violation occurred outside" the identified period from November 2020 through April 2021. ECF No. 14 ("Pl.'s Opp.") at 11-12; Pl.'s Mot. at 11-12. Plaintiff suggests that it sought all closing letters of the identified individuals. *Id*. Not so. In September 29, 2021, correspondence between Brandon Brockmyer of Plaintiff and Chauncey Lawson of the Special Counsel, Brockmyer confirmed the Special Counsel's understanding that Plaintiff sought "final investigation closing letters to the subjects dated between November 2020

---

[1] Page references cite to the pagination reflected at the bottom of each filed page.

and April 2021" for individuals identified in its August 25, 2021, FOIA request. ECF No. 13-2, Ex. 2, September 29, 2021. *See also* Vixamar Decl. ¶¶ 5-6. The record demonstrates that Plaintiff did not seek all the final closing investigation letters for the identified individuals, but rather sought only those letters within the time period of November 2020 and April 2021 as agreed to by Plaintiff.

In any event, the Vixamar Declaration confirms that the Special Counsel conducted a search of its electronic files for documents containing the names of any individuals Plaintiff sought. *See* ECF No. 13-8, Vixamar Decl. ¶ 29. From the documents found, OSC pulled the final Hatch Act investigation closing letters for the individuals named in Plaintiff's request. *See* ECF No. 13-8, Vixamar Decl. ¶ 30. Plaintiff suggests that the Special Counsel did not produce all the closing letters for the individuals identified because the Special Counsel did not produce the closing letters for the investigations of these individuals that were discussed in the 2021 Hatch Act Report. The Hatch Act investigations discussed in the 2021 Hatch Act Report, however, were all closed on November 9, 2021, and November 9, 2021, is outside the November 2020 to April 2021 timeframe of Plaintiff's FOIA request. Indeed, the closing letters following the Hatch Act Report did not exist when OSC responded to Plaintiff's request on October 20, 2021. For these reasons, the Court should reject Plaintiff's argument that the Special Counsel's search was not adequate.

## II.     **The Special Counsel Properly Invoked Exemptions 6 and 7(C).**

Pursuant to Exemptions 6 and 7(C), the Special Counsel withheld the names and addresses of Trump administration officials investigated by the Special Counsel for potential Hatch Act violations ("Subjects"). *See* ECF No. 13-8, Ex. 7; ECF No. 13-9, Ex. 8, Vixamar Decl. ¶ 14; ECF No. 13-10, Millsaps Decl. ¶¶ 3-8. As noted in the Special Counsel's motion, the Special Counsel is required by law to investigate all Hatch Act Allegations it receives, regardless of a complainant's motivation. *See* Vixamar Decl. ¶ 20 (citing 5 U.S.C. §§ 1212(a)(5), 1216(a)). Plaintiff does not

dispute the Special Counsel's withholding of the names of three Subjects identified by the Special Counsel as "Subject 4," "Subject 5," and "Subject 6."  Pl.'s Opp. at 14-15, Pl.'s Mot. at 14-15 (stating that "[a]lthough OSC has not defined what it means by 'mid-level,' or demonstrated that these individuals were not otherwise in the public eye, Plaintiff does not challenge the redactions of their names and identifying information.").  Nor does Plaintiff challenge the Special Counsel's withholding of personal addresses, telephone numbers, and e-mail addresses, *id*. at 14 n.3, or that the information withheld was found in records compiled for law enforcement purposes.  *See e.g.*, Pl.'s Opp.; Pl.'s Mot.  Rather, Plaintiff only challenges the Special Counsel's withholding of the names for Subject 1, Subject 2, and Subject 3 on the bases of Exemptions 6 and 7(C).  *Id*. at 14.

Plaintiff argues that the Special Counsel violated FOIA by withholding the names of two high-ranking Trump administration officials identified by the Special Counsel as Subjects 1 and 2 and the withholding of the name of a third "senior Trump Administration official in 2020 (Subject 3)" because it claims that the Special Counsel has not demonstrated that these individuals' privacy interests outweigh the public interest in disclosure.  Pl.'s Opp. at 14-15; Pl.'s Mot. at 14-15. Specifically, Plaintiff makes four objections: 1) the prominence of these individuals reinforces the public's interest in knowing their identities; 2) the public interest is at an apex; 3) the Special Counsel did not give proper weight to the public interest; and 4) because the Special Counsel did not issue a *Glomar* response, the Special Counsel did not give due consideration to the status of the individuals at issue.  Opp. at 14-16; Mot. at 15-17.  None of these objections amounts to a showing that the Special Counsel violated FOIA by invoking Exemptions 6 and 7(C) for Subjects 1, 2, and 3.

*First*, the prominence of the individuals does not *per se* warrant the disclosure of their identities, as Plaintiff suggests.  Pl.'s Opp. at 15; Mot. at 15.  Plaintiff offers no supporting legal

- 4 -

authority to suggest that the D.C. Circuit or courts within this District have recognized that the prominence of an individual necessarily dictates the disclosure of their identities. Instead, Plaintiff cites two cases, each of which is distinguishable from the present facts and one that rejected a *per se* rule of disclosure. Plaintiff cites *Citizens for Responsibility & Ethics in Washington ("CREW") v. Department of Justice*, 746 F.3d 1082, 1092-93 (D.C. Cir. 2014), for the notion that there is a strong public interest in understanding how agencies carry out statutory duties and decisions not to prosecute a prominent public official. The Special Counsel does not dispute this.

As demonstrated in its motion for summary judgment and explained more below, the Special Counsel recognized the public interest in the public's right to know what the government is up to and for this reason, balanced the individuals' privacy interests against the public interest in disclosure. *See* Mot. at 12-18. Plaintiff also suggests that a categorical rule is appropriate, but that notion was rejected in *CREW*. The *CREW* court did not hold that the prominence of the individuals investigated meant that it should adopt a rule in favor of disclosure. Rather, the D.C. Circuit held that a "categorial rule is inappropriate," *CREW*, 746 F.3d at 1096. Further, *CREW* is distinguishable from the present facts because there, the Department of Justice sought to withhold not only the identities of the private citizens, but also every responsive document in full. Here, the Special Counsel has not sought to withhold responsive material in full.

Plaintiff also cites *Fund for Constitutional Government v. NARA*, 656 F.2d 856, 865 (D.C. Cir. 1981) for the general proposition that Exemption 7(C) requires a balancing of the privacy interest against the public interest in disclosure, a point that the Special Counsel does not dispute. Indeed, the Special Counsel engaged in a balancing of the private interest against the public interest in disclosure as demonstrated in the Special Counsel's motion for summary judgment and as outlined below.

*Second*, Plaintiff objects to the Special Counsel's withholding on the bases that the public interest is "at an apex" because "[a]s the [Special Counsel] Report lays out, some of the Trump administration's senior-most officials violated the Hatch Act—violations the Trump White House 'chose to ignore,'" *id*. at 16, and that because the request concerned potential Hatch Act violations, the context is significant. *Id*.  The Special Counsel does not dispute this context.  Indeed, the Special Counsel recognized the importance of the public interest in disclosure and appropriately weighed the public interest.  Mot. at 14-15, 15-17, 17-18.

Plaintiff also insists that the context as to "whether the officials violated the Hatch Act" is "of particular significance." Pl.'s Opp. at 16; Mot. at 16.  The Special Counsel also concluded that the underlying details of each investigation is significant and to that end, revealed all of the underlying information it considered in determining whether or not the individual in question committed a Hatch Act violation.  The disclosure of the identities would add nothing more to the public interest than what the Special Counsel has already disclosed.

Nonetheless, Plaintiff's real issue seems to center on the amount of weight the Special Counsel afforded to the public interest in weighing the privacy interest against the public interest in disclosure.  But the amount of weight the Special Counsel afforded to the public interest is not a specific percentage delineated by case law.  Instead, the "only relevant public interest in the FOIA balancing analysis [is] the extent to which the disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is put to.'" *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999).  Revealing the individuals' names in question would not shed any more or less light on the Special Counsel's performance of its statutory duties, given that the Special Counsel has disclosed the underlying details of each investigation and its conclusion as to whether each individual in

question committed a Hatch Act violation and that the Special Counsel published a 2021 Hatch Act Report which explained in great detail and provided an extensive amount of information on the Special Counsel's investigations into numerous senior Trump Administration employees that were found to have violated the Hatch Act. Vixamar Decl. ¶¶ 38-39, 46-47, 54-55; Millsaps Decl. ¶¶ 3-6.

Plaintiff also suggests that the public interest is not diminished by the fact that OSC chose to redact information only where it found no violation. But this is not the case. In one instance, the Special Counsel closed the investigation without further action because the video that prompted the Hatch Act complaint was removed from the Twitter account once the Special Counsel raised Hatch Act concerns and because the individual (Subject 2) was no longer a federal employee. Mot. at 16. Nonetheless, the Special Counsel considered the public interest even in the cases where the Special Counsel did not find a violation or chose to close the matter without further investigation and action. To this end, the Special Counsel did not discount the public interest at stake as Plaintiff suggests where there was no violation. In each instance where the Special Counsel found no violation or chose to close the matter without further action, the Special Counsel weighed both the privacy interest and the public interest at stake. *Id*. at 14, 15, 16-18.

*Third*, contrary to Plaintiff's argument that the Special Counsel did not weigh the public interest, as the Special Counsel's motion for summary judgment demonstrated, the Special Counsel balanced the individuals' privacy interests against the public interest in disclosure and concluded in each instance that the public disclosure of the identity of Subject 1, 2, and 3, would constitute a clearly unwarranted invasion of their personal privacy that outweighed any countervailing public interest in disclosure. *See* Mot. at 14-15 (Subject 1), 15-17 (Subject 2), and 17-18 (Subject 3). As such, the Special Counsel properly weighed the public interest at stake. The

Special Counsel noted that the privacy interest in each case was important because individuals have a privacy interest in keeping secret that they were the subject of a law enforcement investigation. *Id*. at 14-15, 16. And for all three investigated individuals, in the final closing investigation letters for each individual (some of whom received multiple final closing investigation letters for different sets of conduct), the Special Counsel found no Hatch Act violation (Subjects 1, 2, and 3) or closed the investigation due to ceased conduct (Subject 2). *Id*. at 14, 15-16, 17.

Importantly, in this balancing, and regardless of the Special Counsel's ultimate determination as to whether a Hatch Act violation was committed, the Special Counsel released significant details about the underlying investigation of each individual—including that with respect to Subject 1, the fact that they spoke at the 2020 Republican National Convention, but did not speak at the convention in an official capacity and did not deliver their remarks from the White House. *Id*. at 14. *See also id*. at 15-16 (describing the underlying details of the Special Counsel's Investigation into Subject 2 including that Subject 2 did not violate the Hatch Act while defending the administration's policies while speaking in their official capacity, while delivering a pre-recorded speech in a non-official capacity at the Republican National Convention and that the investigation was closed as to Subject 2 after it was determined that a challenged video was removed from the Twitter account where it had been posted and that the individual was no longer a federal employee); 17 (describing the underlying details of the Special Counsel's investigation into Subject 3 wherein the Special Counsel found no Hatch Act violation because the particular Hatch Act prohibitions did not apply to Subject 3's position).

The Special Counsel also considered the fact that it had released significant details about its findings and conclusions regarding complaints it received alleging senior Trump administration

officials used their official authority or influence to interfere with or affect the 2020 presidential election in the 2021 Hatch Act Report.  *See* Mot. at 15, 17.  Contrary to Plaintiff's position, the Special Counsel specifically considered the public interest at stake in knowing the identities of the three contested individuals and found in each instance, that given the extensive public information that the Special Counsel had disseminated about each investigation and the investigation of Trump administration officials more broadly, the public had received considerable information about the Special Counsel's Hatch Act investigations regarding various officials within the Trump administration.  The Special Counsel thus met its obligations under FOIA and its actions are entirely consistent with the D.C. Circuit's recognition that "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizen's right to be informed about what their government is up to."  *Davis v. Dep't of Just.*, 968 F.2d 1276, 1281 (D.C. Cir. 1992).  Plaintiff has not demonstrated that the Special Counsel has violated FOIA by withholding the three individuals' identities.

  *Fourth*, Plaintiff's argument that the Special Counsel did not issue a *Glomar* response is of no moment.  A *Glomar* response permits an agency to "refuse to confirm or deny the existence of records" in limited circumstances.  *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).  As noted in the Special Counsel's motion for summary judgment, ordinarily, the Special Counsel would issue a *Glomar* response as it had previously done with similar requests that requested identification of investigated individuals if the Special Counsel had not publicly acknowledged the investigation. Mot. at 13 (citing Vixamar Decl. ¶¶ 8, 32 (citing *Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976))).  Here, the circumstances were different from other requests because Plaintiff had asked specifically about 20 people who may or may not have been investigated by the Special Counsel.  In light of Plaintiff's request, the Special Counsel determined that because of the large number of

individuals Plaintiff asked about, the agency could be more transparent and still protect the privacy interests of the individuals who the Special Counsel had investigated, by producing the substance of the Special Counsel's decisions and only redacting the name of the individual and other identifying information.

### III. The Special Counsel Released All Responsive, Non-Exempt Information.

As a final matter, Plaintiff suggests that the Vixamar Declaration identifies a letter at issue withheld in part dated December 20, 2020, and that because the Special Counsel did not produce the letter, the Special Counsel's production falls short of its legal obligations. Pl.'s Opp. at 18; Pl.'s Mot. at 18. While Plaintiff is correct that the Vixamar Declaration cited a December 20, 2020, letter, the citation was a typographical error and should have cited a December 16, 2020, letter, which the Special Counsel released as part of its production. The attached corrected Vixamar Declaration corrects this typographical error. *See* Corrected Vixamar Decl. ¶ 61. There is no basis supporting Plaintiff's assertion that the Special Counsel's production fell short of its legal obligations.

\* \* \*

**CONCLUSION**

For all the reasons set forth above, in the Special Counsel's motion for summary judgment, in the Vixamar and Millsaps declarations, in the Special Counsel's statement of undisputed material facts, and the corrected Vixamar declaration, this Court should grant summary judgment in Defendant's favor.

Dated: June 5, 2023
       Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:        /s/ Dedra S. Curteman
   DEDRA S. CURTEMAN
   Assistant United States Attorney
   601 D Street, NW
   Washington, DC 20530
   (202) 252-2550

*Attorneys for the United States of America*