UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PROJECT ON GOVERNMENT OVERSIGHT, INC.<br><br>　　　Plaintiff,<br><br>　　v.<br><br>U.S. OFFICE OF SPECIAL COUNSEL,<br><br>　　　Defendant. | Civil Action No. 22-3381 (DLF) |

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Preliminary Statement**

With its reply brief Defendant U.S. Office of Special Counsel ("OSC") has eliminated two of the three outstanding legal issues: the adequacy of its search and the adequacy of its production. OSC has now explained it failed to provide closing letters for eight officials that OSC determined had violated the Hatch Act because the closing letters for all eight were sent on November 9, 2021, a date outside the timeframe for Plaintiff's FOIA request at issue. Apparently, then, OSC waited over a year from when the violations occurred, after the investigated officials had left public office, and after POGO filed its FOIA request to issue its closing letters on a date that also coincided with OSC's issuance of its report, U.S. Office of Special Counsel, Investigation of Political Activities by Senior Trump Administration Officials During the 2020 Presidential Election (Nov. 9, 2021) ("OSC Report").[1] OSC also now admits

---

[1] That report is available at https://osc.gov/Documents/Hatch%20Act/Reports/Investigation%20of%20Political%20Activities%20by%20Senior%20Trump%20Administration%20Officials%20During%20the%202020%20Presidential%20Election.pdf.

that it provided the incorrect date for a document withheld in part, meaning that the agency's document production is not incomplete.

One issue remains, however: OSC's refusal to provide the names of three high-level Trump administration officials pursuant to FOIA Exemptions 6 and 7(C). Ignoring the burden courts have imposed on agencies seeking to withhold high-level officials on privacy grounds OSC insists that disclosing their names would add nothing more to the public interest and their privacy interests must prevail. Caselaw provides to the contrary and mandates their disclosure here.

      1.      *OSC Has Failed To Properly Balance the Public's Interest in Disclosure Against the Diminished Privacy Interests of High-Level Officials.*

The D.C. Circuit has long recognized the diminished privacy interests of senior government officials. In *Stern v. FBI*, 737 F.2d 84 (D.C. Cir. 1984), the court concluded that the public's interest in learning the identity of an FBI Special Agent in Charge who was investigated for his participation in covering up illegal FBI surveillance activities outweighed that individual's personal privacy interests protected by FOIA Exemptions 6 and 7(C). The court drew a sharp distinction between "the negligent performance of particular duties by . . . two lower-level employees" and the "malfeasance by this senior FBI official[.]" 737 F.2d at 94. Based on that distinction the court ordered the FBI to disclose the identity of the senior FBI official, reasoning that "knowing *who* the public servant[] [is] that w[as] involved in the governmental wrongdoing" would "hold the governors accountable to the governed." *Id.* at 92 (emphasis in original).

Nine years later in *Beck v. Dep't of Justice*, 997 F.2d 1487 (D.C. Cir. 1993), the D.C. Circuit added a gloss to *Stern*, explaining that the public interest at issue in *Stern* "was based on the widespread knowledge that certain FBI employees had been censured for their participation

in a notorious criminal investigation." *Id.* at 1493. Viewing both cases together the court in *Ctr. for Pub. Integrity v. U.S. Dep't of Energy*, 234 F. Supp. 3d 65 (D.D.C. 2017), extracted "two key lessons":

> First, the public interest varies depending on the individual government employee involved in the wrongdoing and therefore the agency must make an individualized assessment of the interest as to each employee. Second, that individualized assessment is fact-bound. The factors that courts must consider in weighing the public interest include: (1) the seniority of the employee; (2) the employee's relative degree of culpability; (3) the seriousness of the misconduct; and (4) the level of public awareness of the employee's identity and her actions.

*Id.* at 80. *See also People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, No. 06-930, 2007 U.S. Cist. LEXIS 41825, at *18 (D.D.C. June 11, 2007) (characterizing *Stern* as "require[ing] the release of the identity of a high-level official in the midst of a well-publicized scandal.").

Had OSC properly conducted the required fact-bound assessment here, it would have concluded that the names of the three officials fall outside the protection of Exemptions 6 and 7(C). First, as OSC concedes, the withheld names include "two high-ranking Trump administration officials" and "a third 'senior Trump Administration official[.]" D's Combined Op. to P's M. for SJ, & Reply in Further Support of D's M. for SJ ("D's Reply") at 4. Their senior status satisfies a key element of the fact-bound assessment this Court must consider. *Ctr. for Pub. Integrity*, 234 F. Supp. 3d at 80.

Second, allegations of their misconduct arose at a time that, according to OSC, made them "especially pernicious" because it was "immediately prior to the 2020 election[.]" OSC Report. Moreover, the officials violating the Hatch Act were part of an administration that demonstrated "a willingness . . . to leverage the power of the executive branch to promote President Trump's reelection," and they did so "with the administration's approval." OSC Report

3

at 1. Indeed, OSC concluded that "some officials in the Trump administration intentionally ignored the law's requirements and tacitly or expressly approved of senior administration officials violating the law." *Id.* This conduct, the OSC Report concluded, "sent a clear message to similarly-situated officials—there will be no consequences for breaking the law by campaigning on behalf of President Trump and other Republican candidates at taxpayer expense." *Id.*

Third, allegations of Hatch Act violations by Trump administration officials generated widespread public reporting. For example, *Politico* reported that OSC had opened an investigation into then-Secretary of Education Betsy DeVos, quoting the head of the non-profit Checks and Balances Project who had been advised by an OSC attorney assigned to the case that the OSC would "'investigate matters in your complaint[.]'" Daniel Lippman & Michael Stratford, DeVos under investigation for potentially violating Hatch Act because of Fox News interview, *Politico*, Sept. 21, 2020, https://www.politico.com/news/2020/09/21/betsy-devos-hatch-act-investigation-419471. A Report by Senator Elizabeth Warren's staff noted that then-Secretary of State Mike Pompeo was "under investigation by the OSC for a videotaped speech filmed during an official trip to Israel with Jerusalem as the backdrop and aired at the Republican National Convention[.]" Lawlessness and Disorder: The Corrupt Trump Administration Has Made a Mockery of the Hatch Act, Staff Report prepared for Senator Elizabeth Warren (Oct. 2020) ("Warren Report"), https://www.warren.senate.gov/imo/media/doc/Hatch%20Act%20Violations%20by%20Trump%20Administration1.pdf, at 7. This and other reporting made the public aware of the alleged Hatch Act violations by specifically named high-level Trump administration officials.

Fourth, for at least some of the individuals OSC was not able to ascertain their level of

4

culpability because they refused to cooperate in good faith with the agency's investigations. OSC Report at 46-47. For example, OSC closed its investigation of Education Secretary DeVos because the Education Department refused to provide OSC with "information necessary for OSC to make a determination as to whether Ms. DeVos violated the Hatch Act during an official interview" "[d]espite repeated and detailed requests from OSC[.]" *Id.* at 47-48 n.159.

Taken as a whole, these facts lead inescapably to the conclusion that the public interest in knowing the identities of high-level Trump administration officials that OSC investigated for widely reported violations of the Hatch Act outweigh those individuals' privacy interests. Indeed, those privacy interests are further diminished by the nature of the conduct at issue— using their public positions to advance the political interests of the Trump administration. As the court in *DBW Partners, LLC v. U.S. Postal Service* recognized, "[f]ewer privacy interests are raised when, as here, the allegedly unethical conduct relates to agency operations and not merely to personal conduct." No. 18-3127 (RC), 2019 WL 5549623, at *6 (D.D.C. Oct. 28, 2019).

2. *OSC Failed to Conduct a Fact-Specific Inquiry for Each Withheld Individual.*

Not only did OSC fail to properly weigh the public interest in the withheld identities, but it also failed to make the "individualized assessment" that the FOIA requires. *Ctr. for Pub. Integrity v. U.S. Dep't of Energy*, 234 F. Supp. 3d at 80. As to "Subject 1" OSC considered only that this individual was "a high-ranking federal employee in 2020" who "has receded from the public eye in the intervening years," Corrected Declaration of Mahala Vixamar ("Vixamar Decl.") ¶ 33 (ECF No. 16-1), and who OSC concluded did not violate the Hatch Act. *Id.* ¶ 37. Moreover, OSC concluded it was a "close call" as to whether Subject 1 had violated the Hatch Act (Vixamar Decl. at ¶ 37), making the identity of Subject 1 especially germane. Without

5

knowing the identity of Subject 1 the public cannot fully and properly evaluate how OSC enforces the Hatch Act particularly as to high-level government officials.

Similarly with respect to "Subject 2," OSC considered merely that this individual had been "a high-ranking federal employee in 2020" who, "with the passage of time . . . has moved on to new endeavors." *Id.* ¶ 43. As with Subject 1, the only other factor OSC considered was its conclusion that Subject 2 did not violate the Hatch Act. *Id.* ¶ 45. As to "Subject 3," OSC considered only that Subject 3 had been "a senior Trump Administration official in 2020," id. ¶ 50, is now a private citizen, *id.* ¶ 57, and was exempt from the Hatch Act's prohibition on political activity in their government position. *Id.* ¶ 53. For all three individuals OSC justified withholding their identities primarily because of its conclusion that they did not violate the Hatch Act. Vixamer Decl. ¶ 37 (Subject 1), ¶ 45 (Subject 2), and ¶ 53 (Subject 3).

OSC's analysis lacks the individualized, fact-bound assessment that the FOIA requires for each withheld identity. Instead, it justified withholding their names based on two generic facts: they no longer were public officials and OSC had concluded they did not violate the Hatch Act. Essentially, then, OSC is arguing for a blanket rule that protects the identities of all former officials determined not to have engaged in misconduct or illegality.[2] But without knowing their identities the public cannot fully and properly evaluate how OSC enforces the Hatch Act particularly as to high-level government officials. As the D.C. Circuit recognized in *Stern v. FBI*, "knowing *who* the public servant[] [is] that w[as] involved in the governmental wrongdoing" would "hold the governors accountable to the governed." 737 F.2d at 92. And even if these

---

[2] OSC accuses Plaintiff of advocating for "a categorical rule" that the prominence of an individual requires the disclosure of their identity. D's Reply at 5. To the contrary, Plaintiff merely advocates for the application of the fact-bases analysis announced in *Ctr. for Pub. Integrity v. U.S. Dep't of Energy*, 234 F. Supp. 3d at 80, that considers the prominence of the individual at issue.

individuals no longer are serving in the Trump administration, the possibility that they may return to public office given former President Trump's announced candidacy for president must be considered.

Nor, moreover, has the passage of time lessened the public interest. Hatch Act violations by high-level administration officials continue to be a matter of great public interest. Just last week OSC released a letter concluding that White House Press Secretary Karine Jean-Pierre had violate the Hatch Act by referring to "mega MAGA Republican officials who don't believe in the rule of law" during a press briefing. *See* Letter to Mr. Michael Chamberlain, Director, Protect the Public's Trust from Ana Galindo-Marrone, Chief, Hatch Act Unit, OSC, June 7, 2023, https://www.washingtonpost.com/documents/139f8223-99e4-4ac1-84f3-a9bddd1ad9f8.pdf.

## **CONCLUSION**

OSC relied on a flawed and truncated analysis to conclude that Exemptions 6 and 7(C) protected from disclosure the identities of three high-ranking Trump administration officials widely reported to have engaged in conduct that violated the Hatch Act. For the reasons set forth above and in Plaintiff's opening brief, the Court should grant summary judgment for Plaintiff and order the disclosure of the identities of Subjects 1, 2, and 3.

Respectfully submitted,

 /s/ Anne L. Weismann
Anne L. Weismann
(D.C. Bar No. 298190)
5335 Wisconsin Avenue, N.W.
Suite 640
Washington, D.C. 20015
(301) 717-6610
weismann.anne@gmail.com
*Attorney for Plaintiff*

Dated: June 19, 2023