UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROJECT ON GOVERNMENT
OVERSIGHT, INC.,

    *Plaintiff*,

v.

U.S. OFFICE OF SPECIAL COUNSEL,

    *Defendant*.

No. 22-cv-3381 (DLF)

### MEMORANDUM OPINION

In this Freedom of Information Act ("FOIA") case, Project on Government Oversight, Inc. ("POGO") seeks certain documents from the U.S. Office of Special Counsel ("OSC"). Before the Court are the parties' cross-motions for summary judgment. Dkts. 13, 15. For the reasons that follow, the Court will grant OSC's motion and deny POGO's.

**I.    BACKGROUND[1]**

The Hatch Act, 5 U.S.C. §§ 7321–26, forbids federal "employee[s]" from "us[ing] [their] official authority or influence for the purpose of interfering with or affecting the result of an election." *Id.* § 7323(a)(1). It also bars them from "engag[ing] in political activity" while "on duty" or "in any room or building occupied in the discharge of official duties by an individual employed or holding office in" the federal government, with an exception for certain employees if "the costs associated with that political activity are not paid for by money derived from the Treasury of the United States." *Id.* § 7324(a)(1)–(2), (b)(1).

---

[1] Consistent with Federal Rule of Civil Procedure 56, this section recounts only those facts about which there is no genuine dispute. Fed. R. Civ. P. 56(a); *Sherwood v. Wash. Post*, 871 F.2d 1144, 1147 & n.4 (D.C. Cir. 1989) (per curiam).

1

OSC "has exclusive authority to investigate allegations of political activity prohibited by the Hatch Act." 5 C.F.R. § 734.102(a). It must investigate allegations of prohibited activity and, "where appropriate," bring enforcement actions before the Merit Systems Protections Board. 5 U.S.C. § 1212(a)(2); *see* 5 C.F.R. § 734.102(b). It also has "exclusive authority to . . . render advisory opinions concerning the applicability of" the Hatch Act "to the political activity of [f]ederal employees." 5 C.F.R. § 734.102(a).

Before the 2020 election, OSC received several complaints that senior Trump Administration officials had violated the Hatch Act. *See, e.g.*, Def.'s Statement of Undisputed Material Facts ("SUF") ¶ 18, Dkt. 13-10; *see* OSC, *Investigation of Political Activities by Senior Trump Administration Officials During the 2020 Presidential Election*, https://perma.cc/SCS4-N4NH (Nov. 9, 2021). OSC investigated but, in at least eleven instances, did not pursue enforcement actions. *See* Def.'s Ex. 7, Dkt. 13-7. It explained why in letters addressed to each official accused of a Hatch Act violation. *Id.* Most of the letters concluded that the officials in question had not violated the Hatch Act; one gave prudential reasons why enforcement would not be appropriate. *Id.*

On August 25, 2021, POGO filed a FOIA request for "[a]ll documents that close out investigations of alleged Hatch Act violations by Trump [A]dministration officials released by [OSC], including but not limited to the following personnel: Ivanka Trump, Jared Kushner, Robert O'Brien, Kayleigh McEnany, Ja'Ron Smith, Larry Kudlow, Dan Brouillette, John Ratcliffe, Marc Short, David Friedman, Devin O'Malley, Brian Morgenstern, Karoline Leavitt, Andrew Giuliani, Nikki Haley, Stephanie Grisham, Dan Scavino, Mark Meadows, Ben Carson, and Betsy DeVos." Def.'s SUF ¶ 6 (admitted); Dkt. 13-1 at 2. About a month later, it narrowed its request to cover only the following documents:

2

> Hatch Act investigation final closing letters dated between November 2020 and April 2021 for the same individuals named in [POGO's] earlier letter; previously released records, including any Congressional letter correspondence . . . regarding Secretary of State Mike Pompeo's Republican National Convention (RNC) speech from August 25, 2020 to December 2, 2020; any corresponding . . . letters to Congress regarding Secretary of State Mike Pompeo's RNC speech; and any . . . response letters to Congressional requests for advisory opinions regarding the 2020 RNC from August 1, 2020 to December 2, 2020.

Def.'s SUF ¶ 7 (admitted); Dkt. 13-2 at 2.

"In response to POGO's" requests, OSC "conducted a search of its electronic files for documents [containing] the name of any of the individuals POGO sought." Def.'s SUF ¶ 9. After determining that it had "searched all files likely to contain responsive materials," OSC "identified 38 . . . pages" within POGO's parameters. *Id.* ¶¶ 12–13. The pages included two letters to Members of Congress, two letters to Special Counsel Henry J. Kerner, one letter to Deputy Secretary of State Stephen E. Biegun, and the eleven letters regarding some of the senior Trump Administration officials described above. *Id.* ¶ 13.

On October 20, 2021, OSC released its materials to POGO, but with heavy redactions. *Id.* ¶ 14; Dkt. 13-6. In particular, OSC withheld the names of the Trump Administration officials who received letters and the identifying details of their (alleged) violations of the Hatch Act. Dkt. 13-6. It relied on FOIA's Exemption 6, which allows agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," and its Exemption 7(C), which allows agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* at 1–2; 5 U.S.C. § 552(b)(6)–(7)(C).

On November 9, 2021, OSC released a report documenting Hatch Act violations by thirteen Trump Administration officials: Dan Brouillette, Kellyanne Conway, Alyssa Farah, David Friedman, Jared Kushner, Kayleigh McEnany, Mark Meadows, Stephen Miller, Brian Morgenstern, Robert O'Brien, Marc Short, Mike Pompeo, and Chad Wolf.  OSC, *Investigation of Political Activities by Senior Trump Administration Officials During the 2020 Presidential Election* 17 (Nov. 9, 2021); Def.'s SUF ¶¶ 19–20.  On December 14, 2021, POGO appealed OSC's October 20 release of materials administratively.  Decl. of Mahala Vixamar ¶ 11, Dkt. 13-8.  In response to the appeal and in view of the material included in its report, OSC revised several of its redactions and identified three individuals named in its letters: Kalyeigh McEnany, Ivanka Trump, and Mark Meadows.  Def.'s SUF ¶¶ 16–25; *see* Dkt. 13-7.

POGO sued, alleging that OSC had "wrongfully withheld . . . the names of senior Trump administration officials from its Hatch Act investigation close-out letters."  Compl. ¶ 51, Dkt. 1.  The parties have filed cross-motions for summary judgment.  Dkts. 13, 15.

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, a litigant may move for summary judgment.  Fed. R. Civ. P. 56(a).  "The Court shall grant summary judgment if the movant shows that . . . [he] is entitled to judgment as a matter of law."  *Id.*  In FOIA cases where an agency fails to disclose documents, summary judgment is appropriate if the agency proffers "affidavits [that] describe the documents and the [agency's] justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see Niskanen Ctr. v. FERC*, 436 F. Supp. 3d 206, 212 (D.D.C. 2020).

**III.   DISCUSSION**

Under FOIA, an agency must make "a good faith effort to conduct a search" for records responsive to a request and must release all records not protected by a FOIA exemption. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (search adequacy); *see Judicial Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 738 (D.C. Cir. 2017) (release of records).  FOIA's Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C) allows agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  *Id.* § 552(b)(7)(C).

To decide whether disclosure "could reasonably be expected to constitute an unwarranted invasion" of privacy, a court "must balance" the privacy interests at stake "against the public interest in disclosure." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004); *see Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1174 (D.C. Cir. 2011).  "[T]he targets of law-enforcement investigations . . . have a 'substantial interest'" in keeping "their relationship to the investigations" private.  *Roth*, 642 F.3d at 1174 (quoting *Schrecker v. U.S. Dep't of Just.*, 349 F.3d 657, 666 (D.C. Cir. 2003)).  But citizens have legitimate reasons to seek "information that sheds light on an agency's performance of its statutory duties."  *U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).  For example, when agencies investigate prominent public officials, the public has an interest in learning whether they conducted their investigations diligently.  *See, e.g.*, *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 854 F.3d 675, 679 (D.C. Cir. 2017) ("*CREW II*").

5

In a mine-run case, when a FOIA requestor seeks "the names and addresses of private individuals" from law-enforcement records, those individuals' privacy interests "categorically" outweigh the public's interest in disclosure. *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991). After all, the Circuit has reasoned, private citizens retain strong privacy interests in those records, and a private citizen's name rarely says much about an agency's job performance. *Id.* Things can look different when requestors seek the names and addresses of prominent public servants, both because government officials have "'somewhat diminished privacy interest[s]'" and because the public's interest in understanding how agencies investigate influential officials is especially "weighty." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1092–93 (D.C. Cir. 2014) ("*CREW I*") (quoting *Quinon v. FBI*, 86 F.3d 1222, 1230 (D.C. Cir. 1996); *see, e.g.*, *CREW II*, 854 F.3d at 682. Even then, however, "government officials do not surrender all rights to personal privacy when they accept a public appointment." *Bast v. U.S. Dep't of Just.*, 665 F.2d 1251, 1255 (D.C. Cir. 1981).

POGO concedes that OSC conducted an adequate search; that it produced every document its search uncovered, albeit with redactions; and that many of OSC's redactions were proper.[2] It also does not contest that OSC created its documents for "law enforcement purposes," meaning Exemption 7(C) applies. *See also Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011); *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 32 (D.C. Cir. 1998). What remains is a very narrow dispute:

---

[2] At first, POGO contended that OSC had not conducted an adequate search and that it had not produced certain records that it found. Pl.'s Cross-Mot for Summ. J. at 11–12, 18, Dkt. 15-1. In response, however, OSC made clear that POGO's argument on both points rested on inaccurate factual assumptions. *Compare id.*, *with* Def.'s Opp. to Pl.'s Mot. for Summ. J. at 2–3, 10, Dkt. 17. POGO has since abandoned its inadequate-search and inadequate-production arguments. Pl.'s Reply in Support of Cross-Mot. for Partial Summ. J. at 1, Dkt. 18 ("With its reply brief . . . [OSC] has eliminated two of . . . three outstanding legal issues: the adequacy of its search and the adequacy of its production.").

POGO says that OSC should not have redacted "names" and "identifying information" for three "high-level Trump administration officials"—whom OSC identifies as Subjects One, Two, and Three—in its letters dated December 18, 2020 and January 18, 2020 (Subject 1); February 10, 2020 and January 7, 2021 (Subject 2); and February 18, 2021 (Subject 3).  Pl.'s Cross-Mot. for Summ. J. at 14, Dkt. 15-1.  The Court disagrees.

Subjects One, Two, and Three have a "substantial interest" in keeping "their relationship to the" OSC's inquiries private.  *Roth*, 642 F.3d at 1174; *Schrecker*, 349 F.3d at 666.  OSC investigated each for Hatch Act violations but did not pursue enforcement actions against any of them.  *See* Dkt. 13-7.  That fact implicates "an obvious privacy interest"—an interest "in keeping secret the fact that" each Subject faced "a law enforcement investigation."  *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995).  Subjects One, Two and Three all served in senior positions in the Trump Administration, but that reality does not make their "privacy interest . . . insubstantial."  *CREW I*, 746 F.3d at 1092; *see, e.g.*, *Fund for Const. Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 864–66 (D.C. Cir. 1981) (acknowledging that "high level government . . . officials" retain "legitimate and substantial privacy interests" in the context of law-enforcement investigations).

On the other side of the ledger, the public lacks an equally weighty interest in the names and identifying information POGO seeks.  OSC has disclosed that each Subject held a senior position in the Trump Administration, and the unredacted portions of its letters explain why OSC declined to pursue enforcement actions against each Subject.  *See* Dkt. 13-7.  As a result, more information about the Subjects' identities would shed little light on OSC's own "behavior or performance."  *Safecard*, 926 F.2d at 1205.  Meanwhile, although the public might be interested in learning which Trump Administration officials were investigated by OSC, that interest does not

7

outweigh the Subjects' interests in privacy.  For one thing, "general public curiosity" about the conduct of government employees who have been cleared of wrongdoing cannot outrun those employees' "legitimate and substantial privacy interests," even when those employees are "high level government . . . officials."  *Fund for Const. Gov't*, 656 F.2d at 866, 864.  For another, it is hardly clear that FOIA protects the public's interest in learning the Subjects' identities for its own sake, separate from its interest in learning about OSC's decisionmaking.  FOIA protects the public's right to know how *agencies* carry out "their . . . statutory duties," not its right to learn what the subjects of law-enforcement investigations are "up to."  *CREW I*, 746 F.3d at 1093 (cleaned up).  That is so even when the subjects work for the government.  *See id.*

      Although POGO contends that learning the identities of the Subjects would help it understand whether OSC gave Trump administration officials special treatment, that interest cannot outweigh the Subjects' interests in privacy under Exception 7(C).  POGO does not offer any concrete evidence that OSC treated any of the Subjects differently than other government employees during the Trump Administration.  It speculates that it may have, Pl.'s Cross-Mot. for Summ. J. at 16, Dkt. 15-1, but speculation is not enough.  After all, in *any* case, it is *possible* that revealing the identities of individuals named in law-enforcement files might show that those individuals received special treatment.  *Cf. CREW II*, 854 F.3d at 681–82 (holding that names of "individuals . . . who [had] not previously been publicly implicated" in corruption investigation of Jack Abramoff merited protection under Exemption 7(C), even though some of those individuals might conceivably have benefited from special treatment).

      Nor does it matter that the Department's November 9 report listed various Trump Administration officials as Hatch Act violators.  OSC represents that the Report does not name any of the Subjects, Second Decl. of Travis Millsaps ¶¶ 3–5, Dkt. 20-1, and the Court must credit

OSC's representations in this context, *see Casey*, 656 F.2d at 738.  Similarly, although an individual's privacy interests may diminish when information about them enters the public eye, *see, e.g.*, *CREW I*, 746 F.3d at 1092–93, POGO has not shown that any of the Subjects' Hatch Act investigations have previously been disclosed to the public.

Changing gears, POGO suggests that OSC's decision did not reflect "an individualized assessment of the public interest as to each employee." *Ctr. for Pub. Integrity v. U.S. Dep't of Energy*, 234 F. Supp. 3d 65, 80 (D.D.C. 2017).  Not so.  Although OSC's affidavits are not fulsome, they show that the agency adequately balanced the costs and benefits of disclosure and reached a reasoned decision.

Finally, it does not help that—at least in POGO's telling—"Hatch Act violations by Trump administration officials were rampant and blatant." Pl.'s Cross-Mot. for Summ. J. at 16, Dkt. 15-1.  For one thing, a FOIA request lodged with OSC must seek information about OSC or perhaps another government agency, not individual government employees whom OSC chose to investigate.[3]  *See, e.g.*, *Quinon*, 86 F.3d at 1231; *cf. Reporters Comm.*, 489 U.S. at 773–74.  For another, even if Trump Administration officials generally ignored the Hatch Act, it does not follow that the public has an interest in learning the identities of specific officials whom OSC largely found did *not* violate the Act.  If anything, the opposite is true.  The public knows that some Trump Administration officials violated the Hatch Act and that still more were accused of violating it.  Learning the identity of the Subjects would not appreciably add to that stock of public information.

---

[3] Some authority suggests that, under Exception 7(C), the public has an interest in learning *only* about "the conduct of the agency that has possession of the requested records." *See, e.g.*, *Reporters Comm.*, 479 U.S. at 773.  The Court need not decide whether the public also retains an interest in learning about the conduct of *other* agencies' "performance of [their] statutory duties," however, as POGO does not argue that the Subjects' conduct can be imputed to an agency. *Id.*

*Stern v. FBI* does not say otherwise.  737 F.2d 84 (D.C. Cir. 1984).  In *Stern*, a Special Agent in Charge in the FBI's New York office intentionally covered up an unlawful surreptitious entry "carried out against the Weather Underground."  *Id.* at 87.  After a television reporter lodged a FOIA request with the FBI, the Circuit held that Exception 7(C) did not justify withholding that official's name.  It reasoned that "the public [had] a great interest in being enlightened about . . . malfeasance by [a] senior FBI official" insofar as it would inform the public of the FBI's activities.  *Id.* at 94.  Here, by contrast, OSC did not find malfeasance by Subjects One, Two, or Three.  Even if it had, the malfeasance would not reflect OSC's own activities but rather the individual Subjects'.  *Stern* is thus doubly distinguishable.

## CONCLUSION

For these reasons, the Court will grant OSC's motion for summary judgment and deny POGO's motion for summary judgment.  A separate order accompanies this memorandum opinion.

March 19, 2024

DABNEY L. FRIEDRICH
United States District Judge